EBENEZER HARRIS, Esquire, Reviewer,

*against*

AMOS HUNTINGTON, Junior, et al. Reviewees.

MOTION in arrest.

Attach *Amos Huntington* and *Jedediah Clark*, to answer unto *Ebenezer Harris*, Esquire, in a plea of trespass on the case, for that whereas the said *Ebenezer* is a true, honest, just, and faithful citizen of this and the *United States*, and as such hath always from his nativity hitherto behaved and governed himself, and also hath, for the term of six years last past, been, by the Legislature of the State of *Vermont*, duly appointed, commissioned, and sworn to the office of Justice of the Peace within and for the County of *Bennington*, and until the time of committing the injuries hereafter mentioned, and of the devising, writing, and publishing the false, scandalous, malicious, and defamatory libel, hereafter mentioned, by the defendants, of and concerning the said *Ebenezer*, was always reputed and esteemed and accepted, amongst all his neighbours, and other good and worthy citizens of this and the other *United States*, to be a person of good name, fame, credit, and reputation, and also to have always administered in his said office of Justice of the Peace, within his jurisdiction as aforesaid, with honesty, fairness and impartiality, always conducting therein as became a magistrate of the people, thereby acquiring large sums of money, to the comfortable support of himself and family, and to the great increase of his reputation and riches, to wit, at *Shaftsbury* aforesaid, yet

*No action can be maintained for a libel upon a petition for redress of grievances, whether the subject matter of the petition be true or false, simply on its being preferred to either branch of the General Assembly, or disclosed to any of its members.*

the said defendants, well knowing the premises, but envying the happy state and condition of the said *Ebenezer*, and contriving and falsely and maliciously intending to hurt, prejudice, and injure the said *Ebenezer* in his good name, fame, credit, and reputation aforesaid, and to cause him to be esteemed and reputed to be a breaker of the peace, a quarrelling, fighting, and sabbath-breaking member of society, overreaching and taking undue advantages in obtaining the property of his neighbours, possessing a corrupt and wicked heart, and to prevent the Legislature of the State of *Vermont* from re-electing him the said *Ebenezer* to the office of Justice of the Peace as aforesaid, and to cause him the said *Ebenezer* to be criminally prosecuted for breaking the peace, breaking the sabbath, and for a public cheat, and to ruin him in his reputation and credit therein, did, on the 5th day of *October*, A. D. 1799, at *Shaftsbury* aforesaid, write and publish the following false, scandalous, malicious, and defamatory libel, to divers the good people of this and the *United States*, and to the representatives of the freemen of this State, when in their General Assembly met, to wit, at *Windsor*, in the County of *Windsor*, at their stated session in the month of *October* last past, in the words following, to wit:

To the Honourable the Legislature of the State of *Vermont*, to be convened at *Windsor* on the second *Thursday* of instant *October*,

The petition and remonstrance of us the subscribers, inhabitants of *Shaftsbury*, in which we humbly state the following facts relative to the conduct of

*Ebenezer Harris*, Esquire, Justice of the Peace in said *Shaftsbury*, to wit:

The said *Ebenezer*, instead of preserving the peace, is heinously a peace-breaker. He hath been guilty of quarrelling, threatening, and fighting on the sabbath and other days, all which we are ready to prove.

Further, we believe, from the deposition of *David Peck*, and corroborating circumstances, he has been guilty of overreaching and taking undue advantages in obtaining property of his neighbours. He does not possess that uprightness and integrity of heart and manners that becomes the man who is entrusted with the commission of the peace. This we firmly believe.

Therefore, confiding in the wisdom and uprightness of the Legislature, do solemnly protest against the reappointment of the said *Ebenezer*, and as in duty bound will ever pray.

> *Amos Huntington*, junior,
> *Jedediah Clark.*
> *Benjamin Corey.*
> *Benjamin Corey*, junior.
> *John Downer.*

*Shaftsbury*, 5th of *October*, 1799.


By the means of the writing and publishing which said false, scandalous, malicious, infamous, and defamatory libel aforesaid, he the said *Ebenezer* is greatly hurt, prejudiced, and damnified, in his aforesaid good name, fame, credit, and reputation, and is brought into public scandal, ignominy, and disgrace, amongst all his neighbours, friends, and acquaintance, and those to whom the innocence and integrity of the

Harris
v.
Huntington
et al.

said *Ebenezer* were unknown, have, from the time of publishing the said false, &c. libel, &c. &c. *ad damnum*, 5,000 dollars.

To this declaration the defendants pleaded the general issue, and gave notice that they should give the truth of the words *written* in justification. At the last term, the Jury returned a verdict for the plaintiff, one dollar damages, and the. defendants moved the following rule :

The defendants, after verdict against them, and before judgment had and rendered thereon, by their attorneys, now here in Court, move for a rule on the plaintiff, to show cause, if any he have, why the verdict aforesaid should not be set aside, and no judgment rendered thereon.

First. For that the action aforesaid is brought upon a petition or memorial by the said *Amos* and *Jedediah*, and three other inhabitants of said *Shaftsbury*, praying, for certain reasons therein mentioned, that the plaintiff might not be reappointed a Justice of the Peace for said County of *Bennington*, and, from the evidence adduced in the trial of said cause, it appeared, that said petition was no otherwise published than by presenting the same, to the Legislature when convened in convention for the nomination and appointment of Justices of the Peace and other officers of government, on which evidence the Jury found the defendants guilty of the publication of a malicious libel, which is against law.

Secondly. The Jury aforesaid, to wit, nine of them, consented to a verdict of one dollar damages only, upon the principle, that by law the plaintiff would be entitled to one dollar costs only.

Thirdly. That the said *Amos* and *Jedediah* are joined together in the same action, whereas by law two or more persons cannot be joined together in an action of slander.

Fourthly. For that the plaintiff's declaration, and matters and things therein contained, in manner and form aforesaid, are insufficient in law to render any judgment thereon in favour of the plaintiff against the defendants, and this they are ready to verify, and thereof pray judgment, and for their costs.

Rule granted.

And now, at the present term, the plaintiff showed cause, and the case was argued and decided.*

TYLER, Assistant Judge, delivered the opinion of the Court, the Chief Judge having been of counsel for the plaintiff.

*Opinion of the Court.*

*Curia.* The plaintiff, after setting forth a good character in the usual form, declares in substance, that the defendants, with a design to injure him, and more especially to prevent his re-election to the office of a Justice of the Peace, did, on the 5th of *October*,

---

* As the arguments of the counsel in this cause were elaborate and copious, and may be collected from the opinion of the Court, and would occupy too many pages of this volume, to the exclusion of other cases, of which an immediate report is desirable, they are omitted. The gentlemen of the bar engaged will accept this apology for the omission of what would do them so much credit, and which is perhaps but feebly supplied by the statement of the Judge.....*Reporter.*

Harris<br>v.<br>Huntington<br>et al.

1799, with others, write a false and defamatory libel, which the defendants published to divers of the good citizens of the State, and to the representatives of the freemen of the State, when convened in General Assembly at their stated sessions in that year. The alleged libel is set forth in the declaration *verbatim et literatim*, and in substance states,

That the petitioners are ready to prove, that the plaintiff, instead of preserving the peace, is heinously a peace-breaker, and had been guilty of quarrelling, threatening, and fighting, on the sabbath and other days.

That he did not possess that uprightness and integrity of heart or manners, which becomes a man in the commission of the peace.

And that they are led to conclude, from the deposition of one *Peck*, and other corroborating circumstances, that the plaintiff had been guilty of overreaching and taking undue advantages in obtaining property of his neighbours.

The defendants having pleaded the general issue, with notice that they should give the truth of the words written in justification, a verdict has been found for the plaintiff to recover one dollar damages. A rule has been moved for by the defendants, for the plaintiff to show cause why this verdict should not be set aside.

First. Because the only publication of the alleged libel shown in evidence to the Jury, was the presenting of it as a petition to the General Assembly.

Secondly. That certain of the panel who tried the cause were influenced in their assent to the verdict by improper motives.

3

Thirdly. That two defendants cannot be joined in the same declaration in an action for slander.

Fourthly. Because of the general insufficiency of the declaration.

The rule has been granted, and the several exceptions enforced and combatted by the counsel, in a manner which reflects credit upon their professional industry and ingenuity, and affords favourable auspices, that at a not far distant period the bar of *Vermont* will be viewed in a light not unfavourable by the more eminent of the profession in the elder States.

The first and third exceptions, which are included in the fourth, go to the right of action. The object of the second is merely to obtain a *venire de novo.*

The first involves a question of greater magnitude, and more interesting to the people of *Vermont* than any which has been hitherto agitated in this Court, to wit, whether it is actionable in the citizens to represent their grievances by petition to the General Assembly. Whether such petition, though it should contain false matter, be a libel in the legal acceptation of the term.

It is contended by the defendants it is not. That to petition the King or Parliament is not held to be libellous in *England*, and therefore by the common law, and more especially by that paramount law, our bill of rights, it cannot so be considered here.

The doctrine of libels is now well settled and lucidly explained by the *English* jurists.

" A libel is a false and malicious defamation of any person, made public by either writing or printing, signs or pictures, in order to provoke him to

wrath, or to expose him to public hatred, contempt, or ridicule."

The law punishes the offender by indictment, and gives redress to the injured party by an action of defamation.

In the criminal prosecution, the truth or falsity of the libel is immaterial, for even the truth ought not to be thus promulgated, when its direct tendency is to incite revenge, perhaps occasion bloodshed, or at least disturb the public, peace. But though the accused on indictment are inhibited from this apparently equitable and natural mode of defence, of showing the truth of the words published, yet in the civil action the law has indulged a very liberal defence. The defendant may not only show that the words written are true, but whether true or false, he may justify from the *occasion* of writing and publishing of them, and thus do away the malice which is essential in the definition of a libel, when prosecuted *civiliter.*

1 *Term Rep.* p. 110.

In the case of *Weatherston* against *Hawkin,* it is laid down, that a servant cannot maintain an action against his former master for a letter written by him in which he charges him with fraud, for *the master was justified by the occasion.*

This case does high honour to that legal discrimination for which the Judges of the *English* bench are so eminently distinguished.

The law, which gives an action for a written defamation, did not thereby intend to destroy the common confidential intercourse among friends, and which is the surest guard against imposition. A man may know many fraudulent acts in his hired servant, which he could not prove in defence to an action of defamation, but which he is under every moral and

honourable obligation to communicate, in order to prevent injury to others.

So the occasion will justify the writing in all matters in course of legal proceedings.

An action will not lie for slanderous words in an indictment.

In the case of *Astley*, Bart. v. *Younge*, Esquire, we have an action on the case for speaking and publishing defamatory, false, malicious, and libellous words. The second count in the declaration charges the defendant with having filed a libellous affidavit in the Court of King's Bench, in which he charged the plaintiff with having sworn falsely in a former affidavit. To this count the defendant justified, that he made such affidavit in his own defence in a Court of Justice. The plaintiff demurred generally, and the Court of King's Bench unanimously decided, that the action on this count would not lie.

Numerous other cases might be cited to show, that where the occasion renders the writing and publishing the words necessary, no action of defamation on such writing will lie.

But we proceed to a case more in point, though included in the principle stated—the celebrated case of *Lake* against *King*, decided 19 and 20 *Charles* the second, under the Presidency of Chief Justice *Hale*, assisted by *Twisden* and *Rainsford*, Justices.

This was an action upon the case for *printing* and publishing a scandalous libel of the plaintiff *Lake* by the defendant *King*. The plaintiff set forth his integrity and good character, especially in those particulars in which he, in an official character, had been vilified, and then set forth the alleged libel, in this form, viz. To the honourable the committee of Par-

*Marginal notes:*
Harris v. Huntington et al.

*Cro. Eliz.* 247.
3 *Leon.* 138.
4 *Rep* 14.

2 *Burr. Rep.* p. 807.

*Saund. Rep.* vol. 1. p. 131.

liament for grievances, the humble petition of *Ed-ward King*, &c. showeth; and in fact the libel charged the plaintiff with many horrible and gross abuses, such as extortion, oppression, vexation, and other misdemeanors in his office. The defendant pleaded in bar, that the matter contained in the petition was true, and showed how in some particulars; but rest-ed his justification, that he had presented his peti-tion to a committee appointed by the commons then and there assembled in Parliament, who had full power to hear and redress the grievances complained of; that he caused the petition to be printed, and de-livered the same to the members of the committee. To this plea the plaintiff, as in the present case, de-murred.

This case was oftentimes debated, and had the most deliberate investigation; for the Reporter in-forms us that it was depending twelve terms; and it was agreed, " that the exhibiting of the petition to the committee of parliament was lawful, and that no action lies for it, although the matter contained in the petition was false and scandalous, because it is in a summary course of justice, and before those who have power to examine whether it be true or false."

It was, however, argued for the plaintiff, that it was not justifiable, that is, the *printing of the peti-tion* was not justifiable, for it seems not to have been contended that the presenting it was unjustifiable; but it was insisted, that the printing and dispersing the petition was not justifiable, for if it were, then, under a pretence of proceeding in a course of justice, a libel might be *printed*, published, and dispersed, of any man throughout the whole kingdom, and yet he should have no remedy; and therefore it was said,

that although the exhibiting the said petition was lawful, yet the printing of it was a publication of it to all the world, which is not lawful to be done in any case; but the Court considered, that to print and deliver copies was in the order and course of proceedings in Parliament, whereof they ought to take judicial notice; so that the whole stress of the case lay upon the publishing in the mode set forth in the plea in bar, to wit, by delivering copies of the petition to the members of the committee of the House of Commons, and the Court rendered judgment for the defendant.

It will be observed, that this case is much stronger than the one *sub judice*. The defendants' petition found by the Jury to be a libel, was merely presented to the General Assembly. No copies were printed, taken, or dispersed; but the petition of the defendant *King* was printed, dispersed, and published, among divers subjects of our then lord the king, as alleged in the declaration; and it is acknowledged by this defendant in the plea in bar, that *copies* were delivered to divers subjects of the King, being members of the committee of commons.

The petition of the defendant *King* charges the plaintiff *Lake* with sundry gross misdemeanors in his official character, *positively*. In the libel declared upon, the petitioners present their charges against the plaintiff as allegations, which they expected to have occasion to prove. They do not charge the fraud in obtaining property of his neighbours by undue advantages, *positively;* but rest their belief of it upon the affidavit of *Peck*, and other corroborating circumstances.

An absolute and unqualified indemnity from all responsibility in the petitioner is indispensable, from

the right of petitioning the supreme power for the redress of grievances; for it would be an absurd mockery in a government to hold out this privilege to its subjects, and then punish them for the use of it.

And it would be equally destructive of the right, for the Courts of Law to support actions of defamation grounded on such petitions as libellous.

Petitions for redress of grievances will generally point to officers of the government, who have, or may be supposed to have abused its confidence by mal-administration; and although the government should refrain from prosecuting the petitioners criminally, yet it would operate as effectual a restraint upon them to expose them to an action for damages at the suit of those of whose conduct they have complained to government.

Indeed, if the privilege of petitioning is abused, it might seem better for government to cure the evil, than to suffer it to be corrected by individual suit, for the government can direct or restrain the prosecution, can temper the punishment with mercy, or absolve it by pardon, and *possibly* so conduct, that while they check the abuse, they do not destroy the right; but an irritated and interested individual may conceive it eligible to destroy the right of petitioning. The Court, therefore, consider an indictment or civil action for a libel contained in a petition to the supreme power for the redress of grievances, as standing on the same footing, and the whole to be included in the subject's right to petition.

Our *English* ancestors have ever held the privilege of petitioning the King and Parliament for redress of

grievances as an inherent right; and their Courts of Law have ever, excepting in a solitary instance, discountenanced prosecutions declarative of such petitions as libels.

It is observable, that the statute of the 13th of *Charles* the second, passed six years before the case last cited, though contemplating petitions of a particular nature, and though circumscribing the mode of petitioning, nevertheless recognises the subject's right to petition, and may be considered as in affirmance of that common law right.

But the next and succeeding reigns put the subject's right of petitioning upon an unshaken basis, not only by the verdict of a Jury in a municipal Court, but by the solemn decision of the nation expressed by the national convention, who secured this right, not merely by statute force, but in a declaration of those fundamental rights inherent in *Englishmen*, and which has since been ratified by successive parliaments. We allude to the case of the seven bishops, indicted for a libel in the last year of the reign of *James* the second, and the proceedings at the revolution in 1688.

This unfortunate monarch, who possessed many of those brilliant talents which so highly distinguished the *Stuart* race, had unhappily imbibed opinions of the royal prerogative, which were held by the nation totally incompatible with that portion of liberty which ought to be enjoyed in a limited monarchy.

In the year 1686, he issued a proclamation suspending all the penal laws in ecclesiastical affairs. In the year 1688, he renewed this proclamation, and ordered that it should be publicly read after divine service in all the churches by the national clergy.

Harris
v.
Huntington
et al.

'The primate of *England* and six suffragans petitioned his majesty to be excused from publishing the proclamation in their churches, in which they declared, that it was founded upon such a dispensing power in the crown as had often been declared illegal in parliament, and they could not in prudence, honour, or conscience, so far make themselves parties to it, as a distribution of it all over the nation, and the publication of it even in God's own house, in the time of divine service, must amount to in common and reasonable construction.

The bishops were prosecuted for a high misdemeanor in composing and uttering a seditious libel; and though the cause was tried by a Jury, and the abstract point of the right of petitioning was not brought before the Court by issue at bar; yet we learn, that the question was agitated, and the right of petitioning ably advocated by the counsel for the bishops, Sir *Robert Sawyer*, Sir *Francis Pemberton Pollexfen*, *Treby*, and *Somers*, afterwards the celebrated Lord *Somers;* names which are dear to the lovers of rational liberty, and venerable to the profession. The Jury, supported by the sentiments of *Powell*, Justice, and in opposition to the opinion of a majority of the bench, who wanted either integrity or firmness to support the national rights, acquitted the prisoners. Thus the right of petitioning was established by an *English* Jury. But the subject did not rest here. In the declaration of the Prince of *Orange*, preparatory to his descent into *England*, *James's* conduct in directing this prosecution is enumerated among the national grievances as " the treating of petitions even the most modest, and from persons of the highest rank, as *criminal and seditious*."

*Hume's History of England*, vol. 8. Vide *Hargrave's* edit. of the *State Trials*, vol. 4. p. 317.

3

And this is represented by historians to have been one of the principal errors which led to the abdication of that infatuated monarch.

Upon the abdication of King *James*, and the settlement of the crown in *William* and *Mary* and the protestant succession, which silenced the altercation of centuries upon *English* rights, the Conventional Parliament, in the bill of rights, declared, " that the subject hath a right to petition, and that all commitments and *prosecutions* for such petitioning are illegal."

And we, as the descendants of *Englishmen*, when we formed our constitution of government, reduced to writing this invaluable privilege of the common law; and in the declaration of the rights of the inhabitants of the State of *Vermont*, it is declared, " that the people have a right to apply to the Legislature for redress of grievances, by address, petition, or remonstrance."

And to give, if possible, a more solemn sanction to this political right with others, the 42d section of the second chapter of the constitution was inserted. " The declaration of the political rights and privileges of the inhabitants of this State, is hereby declared to be a part of the constitution of this commonwealth, and ought not to be violated *on any pretence* whatsoever."

This declaration of the right, with the observations already made, might seem to decide the question litigated; but as the point is new, and has been argued with great but not unbecoming zeal on the part of the plaintiff, and appears to be a question of interest to the community at large, which it is desirable should be settled on such grounds as may put it for

*Margin notes:*

Harris
v.
Huntington
et al.

1 *William and Mary*, stat. 2. cap. 2.

Declaration of Rights, *Vermont* Constitution, c. 1. art. xx.

*Vermont* Stat. vol. 1. p. 45.

ever at rest, it may not be improper to investigate it further.

Several objections made by the plaintiff's counsel remain to be considered.

First. That although an action may not lie for a libel upon a petition presented to the house of representatives, the subject matter of which petition is properly cognisable by that body; yet that the charges in this petition are for crimes beyond their jurisdiction, and alone cognisable in the judicial Courts.

Secondly. That the Jury have found the whole declaration true by a general verdict, and the declaration alleges the petition to be a malicious libel, and such a libel is not covered by the twentieth article of the declaration of rights.

That the declaration alleges a publication other than that made to the house of representatives, to wit, " to divers the good citizens of this and the other *United States.*"

Thirdly. That the doctrine, that libellous petitions may be preferred with impunity, and without redress to the persons libelled, is of dangerous consequence to society ; that in this mode the best characters may be traduced, and the most malicious scandals be widely disseminated, with impunity to the defamer, and without redress to the injured.

The Court have given these objections their due weight upon the first. It is to be observed, that though it is true the house of representatives have no power to try persons for crimes, yet it does not follow that they may not examine into the conduct of officers of government, to discover whether they are qualified for re-election, or may not have committed

acts which may subject them to impeachment. The constitution gives the power to the house of representatives to redress grievances, and to impeach state criminals. The Governor and Council, with the consultory aid of the Judges of this Court, are constituted a board to try impeachments; and the house of representatives are thus made the grand inquest of the State to charge such state criminals.

Harris
v.
Huntington
et al.

Constitution of
*Vermont*, c. 2.
s. ix. and xi.

As to the second objection, the Court consider, that though the Jury, by their general verdict, have found the allegations in the declaration, yet that the declaration itself does not set forth any malice, excepting what grows out of the fact of presenting the petition to the representatives of the freemen, in their General Assembly met: and this malice is merged in the right of the citizen to petition for redress of grievances.

Neither does the declaration allege any other publication than by presenting the petition in the mode just mentioned. The expression " to divers of the good people of this and the *United States*," is explained in the declaration to be such citizens as were members of the house of representatives, who were both citizens of this and the *United States*, and such publication appeared in evidence, and is spread upon the record in the rule.

The third objection appears to be the same in substance as that advanced by the plaintiff's counsel in the case of *Lake* v. *King*, and which did not prevail with the Court of King's Bench.

The Court would here observe, that the venerable body to whom petitions of this nature are addressed, though they cannot punish the petitioners, possess an ample power to correct an improper use of this right,

as this Court, though possessing no power to prevent a party's giving notice of facts to be shown under the general issue, or to punish him for so doing, have put a complete check to an illiberal practice of traducing the character of the adverse party in such notices, which, in compliance with the suggestions of their clients, some of the junior practitioners have been induced to do.

But if this right of petitioning for a redress of grievances should sometimes be perverted to the purposes of defamation, as the right of petitioning with impunity is established both by the common law and our declaration of rights, the abuse of the right must be submitted to in common with other evils in government, as subservient to the public welfare.

The Court, therefore, consider, that no action can be maintained for a libel, upon a petition for redress of grievances, whether the subject matter of the petition be true or false, *simply* on its being preferred to either branch of the General Assembly, or disclosed to any of its members.

Though they would here suggest, that it is possible that an action might lie on such petition, if, with a malicious design to injure and defame, it were published in the public newspapers without the order of the General Assembly, as such publication would not be necessary to the occasion, nor would be within the course of proceedings in our Parliament; but in such case it might be doubtful, whether an action in the present form would lie, or whether an action on the case, in the nature of a writ of conspiracy, should not be preferred.

The Court, by the rejection of the testimony of *John Henry* and *Jonathan Wentworth*, Jurors of the panel who tried the issue, offered in support of the second exception in the rule, have superseded the necessity of any further remark on this point, other than that the oftener it is argued, they are more confirmed in the correctness of former decisions, that the affidavits of any of the panel cannot, on motion to set aside a verdict, be read to disclose the deliberations of the Jury-room.

The Court consider the third exception in the rule, that this action cannot lie as against two coupled in the same declaration, as not well taken.

In the case of *The King* against *Benfield and Saunders*, it appears, that an indictment for a libel against two will well lie if it be for an entire offence, *a joint act done by both.* And we have not had cited, neither do we recollect any decision that an action on the case for a libel will not lie, where it is, as in the present case, a joint act done by both defendants. But it is unnecessary to enlarge upon this point, as a favourable decision here cannot benefit the plaintiff. Neither shall we notice the fourth exception, as every object aimed at by the rule has been obtained by the defendants under the decision upon the first.

Let judgment be entered, that the rule be made absolute as of record, and that the defendants have their costs.

*Nathaniel Chipman, Jonathan Robinson,* and *David Fay,* for plaintiff.

*Israel Smith, Lott Hall,* and *Chauncey Langdon,* for defendants.

---

**Margin notes:**

Harris
v.
Huntington
et al.

The affidavits of any of the panel cannot, on motion to set aside a verdict, be read to disclose the deliberations of the Jury-room. Vide *ante,* p. 1 *Windover and Hopkins* v. *Robbins.*

2 *Burr. Rep.* p. 985.

An action on the case for a libel will lie against two or more, if it be a joint act done by all.