HON. ASAHEL PECK,
HON. WILLIAM C. WILSON, } ASSISTANT JUDGES.
HON. JOHN PROUT,

---

FRAZIER O. DUNHAM *v.* ROSWELL POWERS.

*Pleading. Motion in Arrest. Statute of* 1865, (*p.* 24). *Slan-der. Juror.*

Where there are two or more counts in a declaration and one is defective and the verdict general, the cause of action set forth in the defective and the good counts must be the *same* to avoid the effect of a motion in arrest, even under the statute of 1865,* (p. 24).

A petit juror, while acting in the discharge of his duty as a part of the court, is exempt from responsibility by civil action for what he says in the jury room concerning the cause. The rule of absolute privilege and protection, established as to members of legislative bodies, applies to jurors.

---

*This statute provides that no judgment shall be arrested in any civil cause on the ground that the declaration in such cause contains a defective count or counts: *provided* such declaration also contains a good count or counts for the *same* cause of action, &c.

ACTION ON THE CASE for speaking slanderous words. Plea, the general issue. Trial by jury, April term, 1868, BARRETT, J., presiding.

Upon the trial the plaintiff introduced testimony tending to show that, in the year 1866, the plaintiff brought a suit against one Carpenter, to recover the value of a valuable swine alleged to have been killed by his carelessness, returnable before a justice of the peace; that there was a trial by jury and that the defendant was one of the jurors; that upon the trial of that cause and after it had been submitted to the jurors, and while the jurors had the cause under consideration, the defendant spoke words in substance and with the meaning alleged in the declaration.

It appeared from the cross examination of the plaintiff's witnesses that there was a conflict between the testimony given by the plaintiff upon that trial, and the testimony given by the defendant in that action and his witnesses, and that the defendant in this action spoke the words complained of while giving his reasons to his fellow jurors why the plaintiff ought not to be believed in the testimony he had given in that cause. One of the jurors had held out for a while against the views of the defendant and the other four jurors, but had yielded and agreed to a verdict before the speaking of the words, but had not yielded in opinion at the time the words were spoken. The defendant also testified that what he said was at this stage of the deliberations. The defendant introduced testimony tending to show that he did not speak the words in the sense alleged, and that in what he said he acted honestly and in good faith, believing that he was discharging his duty as a juror fairly.

It appeared that no evidence whatever was given upon that trial in regard to the burning of the plaintiff's buildings, or the insurance upon them, or the manner in which such insurance was effected, or in any manner affecting the plaintiff's character or credibility, except that there was a material contradiction between the testimony given by the plaintiff himself, and that by the defendant in that case and his witnesses, and that the decision of the question of the credibility of the plaintiff was material to the decision of the cause.

The defendant requested the court to instruct the jury that

" The occasion of the speaking the words was one which was absolutely privileged, and that no action could be maintained for the speaking of . them ; and further, in case the foregoing request should not be granted, that the court instruct the jury that the occasion was one which was *prima facie* privileged, and that the defendant would not be liable for words spoken on that occasion, if, in speaking them he acted honestly, and in the belief that he was properly discharging his duty as a juror."

The court declined to charge as requested, but did charge that

" In the proper discharge of one's duty as a juryman, anything that he may say as to a party or witness in the case on trial would not give a cause and right of action against him as for slander,— that jurors take an oath to try the case according to the evidence given in court and the laws of the state,—and true verdict give,— that in considering the case submitted to them it was their duty under the law and their oath to regard only the evidence given in court and on the trial,—that in considering and discussing such evidence any comments, remarks, arguments, views or conclusions any juryman might make, or have, or state, would be absolutely privileged, however abusive or scandalous in fact they might be ; but if a juryman assumed in the consultation to make statements as matters of fact to his fellow jurymen about which no evidence had been given on the trial of the case, and which had no connection with or relation to the evidence given on the trial, and those statements would be slanderous if made by him not as juryman, and would be actionable, they would be equally so when made by him acting in his character as juryman ; and the fact of his being juryman would not protect him from legal liability for the slander of his statements,—that such statements would be in violation of his duty, and contrary to the terms and spirit of the oath he had taken,—that as there was no controversy as to the circumstances under which the words were spoken, as shown by the evidence, and as there was no evidence given in the trial of that case as to any of the matters alleged in said statements, and as the statements set forth in the connection and sense averred in the declaration imputed an infamous crime, the defendant would be liable in this action, if the jury should find that he spoke the words in the connection and sense averred."

The question whether the defendant spoke the words as alleged in the declaration, and the amount of damages, were the only sub-

jects submitted to the jury. Upon these subjects the charge was satisfactory.

To the refusal of the court to charge as requested, and to so much of the charge above set forth as is contrary to said requests, the defendant excepted. Verdict for the plaintiff for $241.66.

After the verdict and before judgment, the defendant filed a motion in arrest of judgment; which, without hearing, was overruled, *pro forma*, and to this, the defendant excepted. Judgment on the verdict.

The declaration contained three counts.

The first count set forth that the plaintiff * * * did on * * * in the presence of Grant W. Ranney and divers other persons, with a loud voice, speak, utter and publish the

" Following false, scandalous, malicious and defamatory words of and concerning the plaintiff, and of and concerning the testimony of the plaintiff given by him on his oath in a suit at law then on trial, wherein the said Dunham had impleaded one Horace Carpenter, and which suit had then been submitted to and was being considered by a jury duly empanelled and sworn, the said defendant Powers being one of the jurors thus empanelled and sworn, to wit: ' Dunham' (meaning the plaintiff) ' is a liar;' ' I' (meaning the defendant) ' don't believe a word he' (meaning the plaintiff) ' said;' (meaning that the plaintiff had testified falsely on his oath in the matters then on trial and then being considered by said jury, and that the plaintiff was guilty of perjury.) ' Mr. Austin' (meaning John Austin, agent of the Vermont Mutual Fire Insurance Company) ' came to insure his' (meaning the plaintiff's) ' shop;' (meaning the plaintiff's carriage shop;) ' he' (meaning the plaintiff) ' said there was no insurance on it,' (meaning on said shop,) ' and got it' (meaning said shop) ' insured by him' (meaning said John Austin, agent as aforesaid) ' and then it' (meaning said shop) ' burnt, and he' (meaning the plaintiff) ' got seventeen hundred dollars insurance;' (meaning and insinuating that the plaintiff falsely stated to the said Austin, that there was no insurance upon said shop, for the purpose of fraudulently inducing the said Austin as agent of said Vermont Mutual Fire Insurance Company to insure said shop for a larger sum than he otherwise would have done, and that the plaintiff had burned, or caused the said shop to be burned, that he might obtain the sum of seventeen hundred

dollars, and had thereby defrauded the said Insurance company.) By means of, etc."

The second count set forth that the plaintiff did on  \*  \*  \*

"In presence of F. J. Houghton, and in a certain other conversation with said Houghton and divers other citizens of this state, with a loud voice, speak, utter and publish the following false, scandalous, malicious and defamatory words of and concerning the plaintiff, and of and concerning the testimony of the plaintiff in the suit in said first count mentioned, and of and concerning the burning the plaintiff's carriage shop, to wit: ' I ' (meaning the defendant) ' can't believe a man ' (meaning the plaintiff) ' who would get his buildings' (meaning the plaintiff's buildings) ' insured under false pretences as he' (meaning the plaintiff) ' did by saying there was no incumbrance on them when there was, and that they' (meaning the buildings of the plaintiff) ' burnt and he' (meaning the plaintiff) ' got eighteen hundred dollars;' (meaning and insinuating that the plaintiff, by false representations, procured his buildings to be insured, and then burnt them and defrauded the company that insured them, and received from such company the sum of eighteen hundred dollars.)"

The third count set forth that the plaintiff did on  \*  \*  \*

"In a certain other conversation in the presence of Orman Holden and other good citizens of this state, speak, utter and publish the following scandalous, malicious and defamatory words of and concerning the plaintiff, and of and concerning the burning of the plaintiff's buildings, and of and concerning the testimony which the said plaintiff had given under oath in the cause then upon trial as above, in said first count stated, to wit: ' Dunham ' (meaning the plaintiff) ' ain't to be believed under oath ;' (meaning that he had testified falsely upon said trial, and was guilty of perjury ;) that ' he ' (the plaintiff ) ' lied to the insurance agent,' (meaning John Austin, agent of the Vermont Mutual Fire Insurance Company,) ' and told him there wan't any incumbrance on his buildings, and got them ' (meaning the plaintiff's buildings) ' insured for eighteen hundred dollars, and then burnt them' (meaning the plaintiff's buildings) ' up, and got the money,' (meaning and insinuating that the plaintiff deceived the said agent and procured his buildings to be insured for more than said agent would otherwise have insured them, and then burnt them up to defraud said insurance company.)"

*C. B. Eddy* and *H. H. Wheeler*, for the defendant, cited in

addition to cases cited in the opinion, Starkie on Slander, 239, 292, 417, 420–422; 4 Mass., 27; *Nott* v. *Stoddard*, 38 Vt., 25; *Taft* v. *Howard*, 1 D. Chip., 275; *Ryan* v. *Madden*, 12 Vt., 51; *Fitzsimmons* v. *Cutler*, 1 Aik., 33.

*H. E. Stoughton*, and ———— ————, for the plaintiff, cited *Pattison* v. *Jones*, 8 B. & C., 578, (15 E. C. L. 287); *Sumerville* v. *Hawkins*, 9 E. L. & E., 503: *Child* v. *Affleck and Wife*, 3 B. & C., 403, (17 E. C. L., 185); *Rogers* v. *Clifton*, 3 B. & P., 587; *Bradley* v. *Heath*, 12 Pick., 163; *Torrey* v. *Field*, 10 Vt., 353; *Hoyt* v. *Smith*, 32 Vt., 304; *Cass* v. *Anderson*, 33 Vt., 182.

The opinion of the court was delivered by

PROUT, J. The jury having returned a general verdict in this case, the judgment should have been arrested by the county court, as the slanderous words set forth in the second count of the declaration, (saying nothing of the first,) do not warrant the inuendoes explanatory of their sense and meaning. These words, which it is alleged were spoken by the defendant with the intent to cause it to be suspected that the plaintiff had been guilty of the crime of perjury, imply and point to a different species of fraud; and that is, to a deceit, by means of which the plaintiff obtained an over insurance of his property. The words set forth in the third count import a charge of perjury, and it is not open to this objection; but notwithstanding this count is sufficient, the judgment should have been arrested, as the cause of action declared upon in this count is not the same as that set forth in the second. It must be the *same* to avoid the effect of a motion in arrest; and this is what the statute of 1865 (p. 24) referred to in the argument means, and only that.

The case, however, presents a more important question. On the trial it appeared, as the case shows, that the slanderous words, set forth in all the counts of the declaration, were spoken by the defendant while acting as a juror in a cause in which the plaintiff was a party and had testified—that they were spoken by the defendant to his fellow jurors in the jury room, and while they had the case under consideration, or before they had returned their

verdict into court. The defendant claimed that what he said under these circumstances was not actionable but privileged; or, if not absolutely privileged, *prima facie* so, if he acted honestly and in the belief that he was properly discharging his duty as a juror, and he requested the court to so charge. The court refused to comply with the request, and gave instructions under which the plaintiff obtained a verdict; and it is now urged, that the defendant was entitled to the instructions contained in the first proposition of his request. If he was, that substantially determines the controversy, and renders a consideration of the other question, except as incidentally involved, unnecessary.

A jury participate in the trial of a cause in obedience to the requirement of law, and may be coerced to perform that service. It is a public duty; and, if sometimes, in the discussions of the jury room, they do not indulge in the same pertinency of remark and comment concerning the cause submitted to them as the court, they are presumed to act as conscientiously, and with reference to the evidence before them. Within the limits of their functions, and for the purpose of deciding a disputed question of fact, they possess peculiar powers adapted to that end, which are of a judicial nature, requiring the exercise of deliberation and judgment. Whenever duties of this nature are imposed by law upon a party, the due execution of which depends upon belief and the exercise of the judgment, there is an exemption from responsibility *by civil action* for the manner in which those duties are performed, or even the motives which influence it. This is the general rule applicable to cases which concern the administration of justice between party and party; and upon principle, a juror, while acting as a part of the court, is entitled to the benefit of this rule of impunity, in respect to what he says in the jury room concerning the cause, which also applies to the judge, or to a grand juror, or member of a legislative body,—and he should be subject to no greater risk or hazard. Acting upon oath, and when, as the present case shows, there was a conflict in the testimony, the defendant no doubt entertained a decided opinion, and as a juror he was called upon to express it, as he had a right, as well as the grounds or reasons of it, to his fellows, in justification of his view of the

case. A jury trial is rare these days, as all experience shows, in which a question of veracity or credibility does not arise, involving somewhat the character for truth and reliability of a witness or party, and this is just what occurred in the case alluded to. Whenever this is the case, jurors no doubt discuss the question submitted to them under the influence of more or less feeling, but they are answerable for it only to their own consciences. "The *place* protects them," and this was the ancient common law, unless they gave a false verdict, when they were proceeded against in a very different manner, as they may be now, for misconduct in the discharge of their duty.

As to members of a legislative body, the rule as held in all the cases is, that in the performance of their official duties they are absolutely protected. No action of slander will lie against them, however false and malicious may be the charge they make against the reputation of another, if made in the exercise of the functions of their office, or within the line of their business or duty; and so of grand jurors and magistrates, charging others with the commission of crime. Of judges and jurors, it is said in *Sutton* v. *Johnstone*, 1 Term, 493, although a point not decided, that "the law gives faith and credence to what they do, and therefore there must always in and what they do be cause for it, and there never can be malice in what they do." To subject either to a prosecution for slander for what they may say in the course of the proceeding, as it is expressed, would affect their independence and degrade the administration of the law. Counsellors and parties conducting their own cases are privileged, when they confine "themselves to what was pertinent to the question before the court." *Hastings* v. *Lusk*, 22 Wend., 409; *Mower* v. *Watson*, 11 Vt., 536. In the last case cited it is remarked that "the privilege of all whose duty or interest calls them to participate in the proceedings of courts of justice, is not to be made liable to an action of slander or libel for anything spoken or written therein, provided it be in the ordinary course of proceeding, or *bona fide.*" But there is a distinction, we think, as to the extent of the privilege growing out of the legal duty of a juror to act in that capacity and the duty of counsel arising from his employment and consequent interest,

which induces him to participate in the proceeding. The former acts in obedience to the requirement of law and on oath; the other from motives of interest and pecuniary gain. One is a part or branch of the court, and within the absolute rule of impunity, while the other is only *prima facie* privileged for what he may say in the course of the proceeding, and in which he participates.

In *O'Donaghue* v. *M'Govern*, 23 Wend., 26, COWEN, J., observes: "Sometimes the person complained of is absolutely protected. This would be so where the libel was published by him in the course of his business or duty as a member of the legislature. The place protects him. So of judges, jurors and witnesses," while and when they are acting in the line of their business or duty. These principles we think not only in entire harmony with the law, but fitting and necessary, that jurors may discharge their duties without fear or apprehension of a prosecution at the suit of parties feeling aggrieved by their verdict. *Coffin* v. *Coffin*, 4 Mass., 1; *Harris* v. *Huntington*, 2 Tyler, 129; *Henderson* v. *Broomhead*, 4 Hurl. & Nor., 567; *Thomas* v. *Churton*, 110 E. C. L., 475; Townshend on Slander and Libel, § 227 and note 1113.

The policy of the law is further shown by well understood rules applicable to petitions and motions for new trials. In those cases the affidavits of jurors can not be used to show misconduct on their part in making up the verdict, because, as it is said, the practice would be mischievous. Throwing open the door of the jury room for the purpose sought by this action would be equally so, if not more injurious to the community. Having these views of the merits of the case, the judgment of the county court is reversed and judgment on the verdict arrested, the defendant to take no costs, except costs in this court.