## W. H. VAUGHN *v.* C. H. CONGDON.

*Justice of the peace having issued a Void Complaint, when liable for False Imprisonment.*

1. A grand juror's complaint was exhibited to the defendant, a justice of the peace, November 12, 1880, charging the plaintiff with theft, and alleging the theft to have been committed on September 20, 1874. Thereupon, the defendant, as a justice, on the said 12th day of November, issued his warrant, and the plaintiff was apprehended by a sheriff, brought before the defendant, and after an examination was ordered to procure bail for his appearance to the County Court, and, having failed to do so, was committed to jail on a mittimus issued by the defendant. The statute provides that complaints for theft shall be commenced within six years after the commission of the offense; and that if a complaint is brought after the time thus limited, "such proceeding shall be void and of no effect."—R. L., s. 1714. In an action for false imprisonment; *Held*, that the complaint was void, as it showed on its face that the statute had run on the offense charged; that the defendant had no jurisdiction of the *process*, and was therefore liable; and that this is so, although it was made to appear to him that the crime had not been discovered until the time when he issued the warrant, as the statute began to run from the *commission* of the offense, not from its *discovery*. POWERS, J., dissenting.

2. In this State the law makes the same presumptions in favor of the jurisdiction of justices that it does of that of superior courts.

TRESPASS for false imprisonment. Pleas, general issue, and special plea in bar. Heard on demurrer to the special plea, September Term, 1881, Rutland County. VEAZEY, J., presiding, sustained the demurrer. The plea alleged that, at the time of the supposed trespasses, the defendant was a justice of the peace, duly commissioned and qualified; that the acts complained of were done by him as such justice without malice; "that, heretofore, to wit, on the 12th day of November, A. D. 1880, W. H. Bond, the grand juror of the town of Danby, in the county of Rutland, exhibited to the defendant as justice of the peace as aforesaid, his complaint in writing," etc.; and that "it being made to appear to said justice that the larceny of said * * * by said Vaughn complained of as above, had not been discovered until, to wit, the day said complaint was made to said defendant as justice of the peace as aforesaid, issued his warrant directed to any sheriff, etc., commanding him, etc., to apprehend," etc. The complaint was set out in full in the plea; and it was alleged in the complaint that the grand juror "on his oath of office complaint makes that Warren H. Vaughn * * * on the 20th day of September, A. D. 1874, at * * * took, carried away and stole," etc. It also appeared by the plea that the plaintiff was arrested on the said warrant by a sheriff, that he was brought before the defendant as such justice, that such proceedings were had that the defendant ordered the plaintiff to "find good and sufficient sureties in the sum of $300 for his appearance before the County Court," etc.; that the defendant as a justice on the failure of the plaintiff to procure bail issued a mittimus, and that the plaintiff was committed to jail on said mittimus by a sheriff.

*W. C. Dunton* and *Edward Dana*, for the defendant.

All the acts complained of were done by the defendant as justice of the peace, acting in a judicial capacity, in a matter within his jurisdiction. A judge of a court of record is not liable at common law for any act he does as judge, while acting within his jurisdiction. *Aire* v. *Sedgewick*, 2 Roll. R. 197, 295; *Lange* v. *Benedict*, 73 N. Y. 12; *Yates* v. *Lansing*, 9 Johns.

395; *Hammond* v. *Howell,* 2 Mod. R. 219; *Kibling* v. *Clark,* 53 Vt. 379. The defendant was a judge of a court of record; he was performing a judicial act. R. L., s. 828; *Stone* v. *Proctor,* 2 D. Chip. 113; *Marlin* v. *Blodgett,* 1 Aik. 379; *Stevens* v. *Fisher,* 30 Vt. 202.

The fact that more than six years had elapsed since the crime was committed, is a defence to the charge preferred, and the sufficiency of such defence is to be determined by the justice. *In re White,* 17 Fed. Rep. 723.

If he decides wrongly, his error can be corrected by another tribunal. The justice, acting judiciously, and deciding a question of law cannot be held liable, however erroneous his decision.

Such a question as the one which was submitted to the justice requires a decision, and if he has jurisdiction of the person and the subject matter, as he had in this case, he is not liable for any error of law committed by him. 27 Alb. Law Jour. 87. As said by Ch. J. Shaw in *Pratt* v. *Gardner,* 2 Cush. 69, the justice was not bound, at the peril of an action for damages, or of a personal controversy, to decide right, in matter either of law or fact; but to decide according to his own convictions of right. *Roderigas* v. *Sav. Institution,* 63 N. Y. 464; *Lange* v. *Benedict, supra.* There is the same rule of construction in favor of the jurisdiction of justices as in courts of general jurisdiction. *Wright* v. *Hazen,* 24 Vt. 143. See *In re Cooper,* 32 Vt. 253; *Ex parte Watkins,* 3 Pet. 205; *Meyer* v. *Ralkman,* 6 Cal. 582. A judge of a superior court is not liable for a judicial act in a matter within his jurisdiction. *Lange* v. *Benedict, supra;* S. C. 99 U. S. 68; *Ex parte Lange,* 18 Wall. 165; *Bradley* v. *Fisher,* 13 Wall. 351. Tindal, C. J., said in *Mills* v. *Collett,* 6 Bing. 85, (19 E. C. L. 47) that if a party charged with an offense be brought before a magistrate, he must exercise his judgment on the case, and he is not liable for a mere error of judgment. *Jackson* v. *Wilkinson,* 17 Johns. 145; *Prigg* v. *Adams,* 2 Salk. 674; *Jenkins* v. *Waldron,* 11 Johns. 114; *Chickering* v. *Robinson,* 3 Cush. 543; *Raymond* v. *Bolles,* 11 Cush. 315; *Randall* v. *Brigham,* 7 Wall. 523; *Barnes* v. *Viall,*

8

6 Fed. Rep. 665. *See Cunningham* v. *Bucklin,* 8 Cow. 178; *Evans* v. *Foster,* 1 N. H. 374; *Dicas* v. *Brougham,* 6 Car. & P. 249. A judge is not liable if he falls into an error as to his jurisdiction. *Grove* v. *Van Duyn,* 27 Alb. Law Jour. 86. An action will not lie against a justice of the peace who exceeded his jurisdiction unless he acted wilfully. *Reid* v. *Flood,* 2 Nott. & Mc. (S. C.) 168; 10 C. B. (N. S.) 523.

*Redington & Butler* for the plaintiff.

The complaint and warrant were void. The judgment was void, and no mittimus could legally issue thereon; because, the justice never had jurisdiction of the party or subject matter, or authority to issue the original warrant. *Coursen* v. *Powers,* 34 Vt. 517; R. L. ss. 1667, 1713-14. Issuing the warrant was a ministerial act, not a judicial. *Morrill* v. *Thurston,* 46 Vt. 732; *Kelley* v. *Bemis,* 4 Gray 83; *Noxton* v. *Hill,* 2 Allen 215; *Barber* v. *Tilson,* 7 Gray 54; *Piper* v. *Pearson,* 2 Gray 120, 410, 570; and the defendant—it being a ministerial act—is liable for the damages resulting from it. *Briggs* v. *Bardwell,* 10 Mass. 356; *Kendall* v. *Powers,* 4 Met. 553; *Daggett* v. *Book,* 11 Cush. 262; *Sanford* v. *Nichols,* 13 Mass. 286. A justice is liable for the results of void acts. *Plant* v. *Hallzman,* 4 Cranch, C. C. 462; *Branican* v. *Scott* 3 Camp. 388; *Lange* v. *Benedict,* 73 N. Y. 12; *Striker* v. *Mott,* 6 Wend. 465; 1 Swift Dig. 546. In *Sullivan* v. *Jones,* 2 Gray 570, the justice had rendered a lawful judgment, but illegally issued an execution against the body. He was held liable. So in *Kendall* v. *Powers,* 4 Met. 553, where on a valid judgment he had issued a void mittimus. *See Spencer* v. *Perry,* 17 Me. 413; *Pratt* v. *Hill,* 16 Barb. 303; *Aiken* v. *Richardson,* 15 Vt. 500. It must affirmatively appear upon the record that the court had jurisdiction. *Turner* v. *Roly,* 3 N. Y. 293. A justice has been held liable for acting under an unconstitutional statute. *Kelley* v. *Bemis,* 4 Gray 83; 1 Chit. Pl. 90, 209, 213; *Borden* v. *Fitch,* 15 Johns. 121; *Bigelow* v. *Stearns,* 19 Johns. 39; *Allen* v. *Gray,* 11 Conn. 95. Jurisdiction of process is necessary. *Grumon* v. *Raymond,* 1

Conn. 40; 14 How. 103; 14 Pet. 154; also, of the subject matter. *Hunt* v. *Hunt*, 72 N. Y. 217. In the case at bar the court had no jurisdiction of the subject matter, as his jurisdiction of the subject of larceny only extended over a period of six years.

The opinion of the court was delivered by

ROWELL, J. The statute provides that complaints and prosecutions for theft shall be commenced within six years after the commission of the offense, and that if a complaint, an information or indictment is brought, had, commenced, or prosecuted after the time limited as aforesaid, "such proceeding shall be void and of no effect." The complaint exhibited to the defendant on November 12, 1880, alleged the offense to have been committed on September 20, 1874, more than six years before the bringing of the complaint, and the question is, whether the defendant had any authority to cause the plaintiff to be apprehended and committed to prison.

It is an elementary rule in criminal pleading that when the time for prosecuting an offense is limited, the indictment must lay the offense within the time limited, or it will be fatally defective, even after verdict. 1 Am. Crim. Law, s. 445; *State* v. *G. S.*, 1 Tyler, 295; *State* v. *Rust*, 8 Blackf. 195; *People* v. *Miller*, 12 Cal. 291; *People* v. *Gregory*, 30 Mich. 371.

In this case the complaint showed on its face that the statute had run on the offense charged, and thus the defendant had notice that it was "void and of no effect." He had no authority to issue a warrant on such a complaint; and the fact that it was made to appear to him at the time the complaint was exhibited that the larceny had not been discovered till then makes no difference, as the statute began to run from the *commission* of the offense, not from its *discovery*. There *was* no complaint in law. It is the same as though there had been none in fact. He had no jurisdiction of the *process*, and jurisdiction of the process is as essential as jurisdiction of the person and the subject matter. In *Morgan* v. *Hughes*, 2 T. R. 225, it is said that when a person is committed to prison by the warrant of a justice without

accusation, some one is guilty of false imprisonment, and that it must be the imprisonment of the justice, who is the immediate and not the remote cause of it. In this State the law makes the same presumption in favor of the jurisdiction of justices that it does in favor of the ·jurisdiction of superior courts of general jurisdiction. *Wright* v. *Hazen* and *Gordon*, 24 Vt. 143. But presumptions are indulged in only to supply the absence of evidence or averment respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence, or contains an averment with reference to a jurisdictional fact, it will be taken to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, nor that the fact was otherwise than as averred. *Galpin* v. *Page*, 18 Wall. 350; *Wade* v. *Hancock*, 14 Reporter 672; Freeman Judg. s. 125. Hence it cannot be presumed that the allegation of time in this complaint was a mistake, and that the evidence may have shown that the offense was in fact committed within the time limited. The case must stand on the presumption and ground that the offense was in fact committed more than six years before the complaint was exhibited. It does not stand as it would had the complaint laid the offense within the time limited, but the evidence had shown it without the time. Magistrates of neither superior nor inferior courts are answerable for a want of jurisdiction arising from a mistake of fact that they had no means of discovering nor correcting, nor when they would have had authority to act had the facts been as alleged by the party. *Lawther* v. *The Earl of Radnor*, 8 East. 113; *Pike* v. *Carter*, 3 Bing. 78; 1 Smith Lead. Cas. 1135. In *Aiken* v. *Richardson*, 15 Vt. 500, it was held—as it has been since in *Muzzy* v. *Howard*, 42 Vt. 23—that under the statute against arrest and imprisonment for debt there was no competent jurisdiction to issue a capias without the requisite affidavit, and that the case was analogous to the cases that proceed on the ground that jurisdiction of the process is as essential as jurisdiction of the person and of the subject ·matter. And

*Smith* v. *Bouchier*, 2 Str. 993, was referred to approvingly, which was trespass and false imprisonment against five, who justified under process of the University of Oxford, for that by the custom, a plaintiff making oath that he had a personal action against any party within the precincts of the university, and that he *believed* the defendant would not appear but run away, the judge might award a warrant to arrest him, and detain him till security was given for his answering the complaint; that the defendant Bouchier made a complaint to the defendant Shippen, the vice-chancellor, of a personal action against the plaintiff, and that he *suspected* the plaintiff would run away; that he took his oath of and upon the truth of the premises, upon which a warrant was granted to the other defendants, whereon plaintiff was arrested.   The court held that the custom was not pursued, for that by it the plaintiff was to swear to his his *belief* of the defendant's design to run away, whereas he only swore that he *suspected* it, which was not the same thing; and the plaintiff had judgment against all the defendants.   *Wright* v. *Hazen* and *Gordon, supra,* was case for false imprisonment against the party and the justice for an arrest for debt without the requisite affidavit.   As to the justice, the pleadings left the case to stand on the fact that the plaintiff was a resident citizen at the time the writ issued, so the plaintiff had judgment on the pleadings; but in view of a repleader being awarded, the court said that all it would be necessary for the justice to show was, that the original writ described the plaintiff as a non-resident, and that he signed it supposing such to be the fact, having no mode of trying that question in advance, and that he was not bound to know at his peril the facts limiting his jurisdiction.   This holding would make the justice liable if the original writ described the plaintiff as a *resident,* unless the requisite affidavit was filed, for he would then have knowledge of the facts that limited his jurisdiction.

In *Carleton* v. *Taylor,* 50 Vt. 220, it is said to be a well settled rule of law that when the court had no *jurisdiction of the process* it is nugatory and void, and that all persons acting under it are without protection; that if, under our statute exempting

from arrest in suits on contracts, the process issues against one not of the class named, or without compliance with the prescribed condition, it issues without warrant of law, and the court has no jurisdiction of the process.

In *Merrill* v. *Thurston*, 46 Vt. 732, a justice was held liable where the plaintiff was committed on a warrant issued to bail in a recognizance for an appeal in a liquor prosecution, the recognizance not being one authorizing a surrender of the principal in discharge of bail. That was a stronger case for the defendant than this, for there the facts may fairly be said to have given the defendant colorable jurisdiction, and to have called upon him to decide whether he had jurisdiction and authority to act or not; while here the facts presented had no color of legal value, and the defendant's action in the premises was but the commission of an official wrong.

Whatever the decisions elsewhere have been on the subject— and they are not uniform—we deem it impossible to sustain this plea without overruling several decisions of this court that have long been recognized and practiced upon as the settled law of the State.

Judgment affirmed, cause remanded, and repleader awarded on the usual terms.

Dissenting opinion by

POWERS, J. I respectfully dissent from the majority of the court in this case.

I. The facts disclosed in the plea and confessed by the demurrer, shortly stated, are that on November 12th, 1880, Bond, a grand juror of the town of Danby, presented to the defendant, a duly qualified justice of the peace within and for the county of Rutland, a complaint in writing and under the grand juror's oath of office, charging the plaintiff with stealing certain goods on September 20th, 1874; and that thereupon the defendant in good faith, in his official character as such justice, issued his warrant for the arrest of the plaintiff, who, thereafterwards and thereunder was brought before the defendant, as such justice, to

answer to such complaint; and that such proceedings were had in the premises that the plaintiff was ordered to find sureties for his appearance before the County Court to make answer to such complaint, neglecting which the plaintiff was committed.

By our law, town grand jurors are informing officers, having authority to prefer complaints in writing, and under oath, to justices of the peace, for the crime of larceny; and such justices have authority upon such presentments to hear and finally determine the cause, if the property stolen is less than seven dollars in value, otherwise they have authority to bind over the accused for his appearance in the higher court for trial thereon.

The rules of pleading require an averment of value in cases of this kind, but such averment is not conclusive. The prosecutor or the defendant may by evidence prove the true value of the goods, and the jurisdiction of the justice is determined by such proof. 2 Russ. Cr. 801; 2 Whar. Cr. Law, s. 1837 a. The complaint in this case was filed with the justice, November 12, 1880, and alleged the larceny to have been September 20, 1874, more than six years before proceedings had.

Our Statute of Limitations read as follows:

SEC. 1713. " Complaints and prosecutions for theft, robbery, burglary and forgery shall be commenced within six years after the commission of the offense.

SEC. 1714. If an action, * * * complaint, information or indictment, for a crime or misdemeanor other than arson and murder, is brought, had, commenced or prosecuted, after the time limited in the preceding section, such proceeding shall be void and of no effect."

The majority of the court conclude that as the complaint on its face averred an offense more than six years old, it was fatally defective, and the justice for this reason had no jurisdiction to issue his warrant, and for so doing is liable civilly to the plaintiff in damages.

The cases cited by the majority certainly lay down the rule, that a complaint like this, averring a time within the Statute of Limitations, is on demurrer, or even on motion in arrest of judg-

ment, fatally defective; and many other cases not cited hold the same way.

But a careful examination of these cases will show that the current of authority has been set in motion by text writers without carefully attending to the reason upon which their propositions rest; and that courts have accepted such propositions more upon trust than upon an inquiry into and approval of their propriety.

Except in burglary, the allegation of time, like that of value, in an indictment is mere matter of pleading. It must be laid before action is brought; but however laid the true day may always be shown. This proposition is fortified by all authorities, when the time laid is within the period allowed for the prosecution. What sensible reason can be given for a different rule, if the time be laid beyond the period allowed for prosecution? The crime is as much an offense in essence whether one or ten years old. The taking of the goods has not, by lapse of time, grown into a lawful ownership in the thief, nor the breach of the law been justified because he has successfully concealed himself for six years. ·

I cannot subscribe to the doctrine advanced in some of the cases that the Statute of Limitations in criminal cases is to be construed as an amnesty to offenders; or that it is a wise policy to offer a premium to experts, by declaring that the government unasked will shackle itself in a way to promote the violation of its own laws.

The Statute of Limitations in no legal sense takes from the act its criminal quality, but as in civil cases merely *bars the remedy.* In civil cases it *must* be pleaded as a defence. In criminal cases it *may* be pleaded, or advantage of it may be taken, under the general issue. This is confidently believed to be the only difference in the application of the statute in civil and criminal cases. In both it goes to the remedy, and in both *is matter of defence.*

In this case s. 1713 limits prosecutions to six years. The *effect* of proceedings instituted more than six years after the date

of the offense is found in a subsequent section, which, though it does not name larceny in terms, includes it in category.

By the settled rule of pleading, an exception or proviso in a statute is to be negatived, where it so far enters into the substantive matter of the enacting clause as to form part of such matter, by limiting, qualifying, or in some way describing it. 1 Whar. Cr. Law, s. 378; *State* v. *Stokes*, 54 Vt. 179; *State* v. *Barker*, 18 Vt. 195.

But if the proviso be contained in a separate clause, and *a fortiori*, in a subsequent section of the statute, which makes no reference to the enacting clause, it need not be noticed by the pleader. As is said in the very early case of *Jones* v. *Axen*, 1 Lord Raym. 120: "When there is a clause for the benefit of the pleader, and afterwards follows a proviso which is against him, he shall plead the clause and leave it to his adversary to show the proviso." So says Wharton, *supra :* "For all these (provisos in distinct clauses) are matters of defence, which the prosecutor need not anticipate, but which are more properly to come from the defendant."

So says this court in *State* v. *Barker, supra :* "If thee xception is distinct from the enacting clause, it then becomes matter of defence."

The case of *U. S.* v. *Cooke*, 17 Wall. 168, same case, 12 Am. Law Reg., N. S. 682, contains an exhaustive discussion of this rule of pleading in its effect upon the Statute of Limitations. This case *is precisely in point ;* and for this reason "outweighs in metal" a score of cases like those cited by the majority. In Cooke's case an offense was created by one 'clause of a statute, and by a succeeding clause it was provided that no person should be prosecuted, tried or punished for the same, unless the indictment be found within two years. The indictment laid the offense more than two years before it was filed, and it was met by a demurrer. The court say: "Accused persons may avail themselves of the Statute of Limitations by special plea or by evidence under the general issue; but courts of justice, if the statute contains exceptions, will not quash an indictment because it

appears upon its face, that it was not found within the period prescribed in the limitation;" and later on: "Nor is it admitted that any different rule would apply in the case, even if the Statute of Limitations did not contain any exception, *as time is not of the essence of the offense;* and also for the reason that the effect of the demurrer, if sustained, would be to preclude the prosecutor from giving evidence, *as he would have a right to do*, under the general issue, to show that the offense *was committed within two years* next before the indictment was found and filed." I have italicised Judge CLIFFORD's language to make its pertinency to the case in hand more obvious.

This case explodes the theory that the Statute of Limitations in criminal cases is anything but matter of defence. A learned and exhaustive note is appended to the report of this case in the Law Register, in which all the cases cited by the majority of the court in this case, as well as many others, are reviewed, and the radical error running through them laid bare; and the annotator concludes, as any attentive reader of the case must, as follows: "The result of the foregoing analysis shows, that the notion of an indictment being demurrable for laying a time beyond the statuory period, is, with the exception of the loose statement of two or three text-writers of recent and native growth; and we have the singular spectacle of an American court in this century being asked to sustain a demurrer which, in the strictest age of the English common law, was regarded as containing only a frivolous objection."

The trend of the cases since Cooke's case is, unquestionably, in the same direction, and it, undoubtedly, is the expression of the true rule upon the subject.

The objection then to the complaint in question was one *personal to the respondent therein.* He might desire a vindication against the charge, and decline to urge the limitation accorded by the statute. The doctrine of the majority compels the State to enforce a defence to its process whether it in fact exists or not, if the complaint apparently indicates its existence. If the pleader by inadvertance happens to lay the time one day

Vaughn *v.* Congdon.

too early, the guilty respondent by demurrer can shut out proof of the true day and escape responsibility.

Our statute should have no such construction. The provision that proceedings after six years shall be void and of no effect, means that if *in fact*, not in form, they are more than six years subsequent to the date of the offense, they shall be adjudged void when the fact appears *as a defence.*

The defendant, therefore, was not bound to anticipate any defence that might be urged against the crime charged. The complaint was preferred by the proper official and set out an offense cognizable by him. If the Statute of Limitations could be urged against the charge it must come in by way of defence; and until it comes in, the complaint was valid in form and substance, and the justice could entertain it till shown to be otherwise.

As the reasoning of the majority rests upon this radical error respecting the form of the complaint, it follows that no liability was incurred by the defendant in the proceedings as the defence of the statute was not made.

II. . But the defendant's plea discloses a complete bar to this action irrespective of the question of the Statute of Limitations.

He had general jurisdiction over the crime of larceny and over all persons charged with that crime. His jurisdiction over the crime, and over the plaintiff charged with it, was invoked by an informing officer whose duty it was to invoke it. When the complaint is laid before him he *must* do one or two things—issue, or refuse to issue his warrant. If he refuses on the ground that the offense is outlawed, and therefore he has no jurisdiction to issue the warrant, is not his refusal a decision in his judicial character upon the question of his jurisdiction?

On the other hand, if believing he has jurisdiction he decides to issue the warrant, is not such decision equally a judicial determination of the question of his jurisdiction? In both cases in my judgment he has jurisdiction in the fullest sense of the word.

If in the first instance the justice is compelled to decide the preliminary question of his jurisdiction, it follows, if. he decides that he has jurisdiction, he *does* have it—his own decision gives

it to him. In this State, justice courts are courts of record. As such they necessarily have power to decide this question. "Courts of record, having authority over the subject matter, are competent to decide upon their own jurisdiction, and to exercise it to final judgment." Freem. Judg., s. 122; *Grignow* v. *Astor*, 2 How. 340. "The question whether any offense was or was not committed, that is, *whether the indictment did or did not show* that an offense had been committed, was a question which that court (a court of record) was competent to decide." *Ex parte Watkins*, 3 Pet. 206, per MARSHALL, Ch. J. The records of such courts import verity and need not disclose on their face evidence of jurisdiction. Whereas the doings of inferior courts, as the term is used in the books, must show affirmatively the *fact* of jurisdiction before verity can be predicated upon them.

Inferior courts have an equal power to decide the question of their jurisdiction; but the decision of the question does not have the conclusive effect that is given to judgments of superior courts.

In *Brittain* v. *Kinnaird*, 1 Brod. & Bing. 432, DALLAS, Ch. J., says: "The magistrate, it is urged, could not give himself jurisdiction by finding that to be a fact which did not exist. But *he is bound to inquire* as to the fact, and when he has inquired *his conviction is conclusive of it.*"

In *Bradley* v. *Fisher*, 13 Wall. 335, FIELD, J., says: "If a judge of a criminal court invested with general criminal jurisdiction over offenses committed within a certain district should hold a particular act to be a public offense, and proceed to the arrest and trial of a party charged with such act, no personal liability to civil action for such acts would attach to the judge, although these acts would be in excess of his jurisdiction or of the jurisdiction of the court held by him, *for these are particulars for his judicial consideration*, whenever his general jurisdiction over the subject matter is invoked."

In *Grove* v. *Van Duyn*, 44 N. J. Law, 654, a complaint was presented to a justice of the peace setting forth certain facts claimed to constitute a criminal offence. In fact no offence was

charged as was finally determined. Nevertheless, the court, speaking through BEASLEY, Ch. J., held that no action would lie against the justice, on the ground that his jurisdiction was invoked by the proper agencies of the law, and thus the question of his right to act in the premises was *colorably* before him and it became his *duty to decide* the question of his jurisdiction. The court say: "When the judge is called upon by the facts before him to decide whether his authority extends over the matter, such an act is a judicial act, and such officer is not liable in a suit to the person affected by his decision, whether such decision be right or wrong."

In *Lange* v. *Benedict*, 73 N. Y. 12, where the defendant decided for himself that he had jurisdiction to impose a certain sentence upon the plaintiff for violating a criminal statute, it was held, though the defendant's decision was confessedly wrong, that the defendant was not answerable to a private action. The court epitomize the reasoning thus: "The *power to decide* protects, though the decision be erroneous."

A large percentage of cases in the Federal Courts involves questions of jurisdiction which those courts decide for themselves; and when, upon their own decisions, they assume jurisdiction, whether the same be rightful or otherwise, the determination is conclusive until overruled by competent authority, and protects all persons acting under it.

Many cases can be found holding that justices of inferior courts are liable for acts *extra* their jurisdiction; but they are generally cases where in no event, and under no circumstances, could they act at all upon the subject matter before them. Such cases confessedly stand upon sound ground, but they are not in point here.

The proposition here contended for is this: That in cases where the subject matter, as in this case the crime of larceny, is within the general jurisdiction of the justice to hear and determine, and all persons accused of that crime are subject to arrest under his warrant; and the jurisdiction of the justice over that crime, and this plaintiff as a person accused of it, is invoked by

the customary presentment authorized by law; then by the uniform current of authority he cannot be made liable civilly for the erroneous determination of any question arising in the proceedings which he decides judicially from the preliminary question of jurisdiction to final judgment on the merits.

The majority concede that the distinction drawn in some of the cases, English and American, between the responsibility of judges of inferior and superior courts does not exist in this State. The liability of the justice in this case is precisely the same as that of a judge of the Supreme Court, in case the state's attorney had filed in County Court an information against this plaintiff for the same offense with the same defective allegation of time, and such judge had thereupon proceeded to the arrest and trial of the plaintiff thereon. It will be noticed that the proposition above advanced, as embodying the law applicable to this case, stands clear of that class of cases where the justice acts *when not called upon* to act. *Morgan* v. *Hughes*, 2 T. R. 225, is a representative case of this class, and is cited by the majority, as upholding this view. In that case the magistrate maliciously issued his warrant *without* any information filed, upon a charge of felony. The action was case, and the *exact point in judgment* was that trespass, not case, was the proper remedy. In reasoning upon this question ASHURST, by way of illustration, says: "But where a person is committed to prison by the warrant of a justice, *without any accusation*, some person is guilty of false imprisonment." To this I agree, and I agree that the person so guilty is the justice. This same doctrine was promulgated more than a century before the case of *Morgan* v. *Hughes*. In *Windham* v. *Clere*, Cro. Eliz. 130, it was said: "If a man be *accused* to a justice of the peace of an offense for which he causeth him to be arrested, although the accusation be false, yet he is excusable; but if the party be *never accused*, but the justice of his malice and his own head cause him to be arrested, it is otherwise."

In the case at bar if the defendant "of his own head" had issued his warrant he would unquestionably be a trespasser. But

the criticism upon the reasoning of the majority is, that these cases upon which they rely are entirely outside the question raised here. In this case the plaintiff *was* accused by the official having power to accuse. Whether the accusation disclosed on its face the commission of an offense by the plaintiff was properly before the defendant as a judge, and he was called on to decide. this question. The *power* to decide it, must in the nature of things exist, for he is *obliged* to decide. The issue of his warrant was the conclusion of his judgment upon the question of his right to act judicially upon the complaint.

Applying the jurisdictional test insisted upon by the majority, it is easy to see that their conclusion cannot be sustained. The defendant had jurisdiction to every intent and purpose in the law required.

What is jurisdiction? It is the power to hear and determine a cause. Bou. Law Dic.; *U. S.* v. *Arredondo*, 6 Pet. 691; *Grignow* v. *Astor*, 2 How. 338. Any movement of the court in the cause is an *exercise of jurisdiction*. *State of Rhode Island* v. *Massachusetts*, 12 Pet. 718. It is conferred upon the court by the law, and its scope measured by the law.

Cases can easily be conceived in which the distinction between jurisdiction over the subject matter and jurisdiction over the person, or the process, is manifest. But in criminal proceedings no such illogical distinction can exist; for jurisdiction over the subject matter *ex vi termini* includes the process and the person. There can be no wrongful act without an actor; no larceny without a thief, and no trial without process. Now, when the law gives the judge general jurisdiction to hear and determine a complaint for the crime of larceny, this *per se* gives him full jurisdiction over all persons accused of that crime, and of every process proper to be issued to enable him to " hear and determine the cause."

The jurisdictional test of judicial liability to a civil action has been examined herein, not because I consider it the true test involved, but because the majority of the court have adopted it.

The effort has been to show that, on this footing, the defendant had the requisite jurisdiction, and is thus excusable.

The jurisdictional test, however, as is said in *Grove* v. *Van Duyn*, is not the measure of judicial responsibility.

Immunity from liability in favor of judges rests upon the broad ground of public policy, which declares that a judge, for acts done by him in his judicial capacity, *is absolutely privileged from action*. It is an official privilege, which, though it covers a multitude of sins, is still absolutely essential to the due administration of justice. It is a privilege not primarily designed for the protection of the judge, but for the *protection of the public*, by making the judges free, independent, and fearless in the discharge of their duties. No judge could act independently if conscious that he was exposed to an action by every disappointed suitor in his court. If a judge were liable to action, then the question whether he has properly discharged his judicial duties must be submitted to a jury to determine according to their notions. In like manner the judge trying his case could be sued, his conduct reviewed, and so on *ad infinitum*. If this doctrine is to prevail, it is more than probable that vindicative suitors and belligerent counsel will have a large fraction of the trial justices in Vermont upon the dockets of our courts as defendants.

The privilege exempting judges from liability to action is established by a long line of authorities, dating from the earliest times of the common law. In *Gwynne* v. *Poole*, 2 Lutw. 387, where a judge of an inferior court had caused the arrest of the plaintiff in a cause over which he had no jurisdiction, general or special, the judge was protected because he acted as judge in a matter over which, he had reason to believe, he had jurisdiction. In *Taaffe* v. *Lord Downs*, 3 Moore, P. C. 36, n. 1., the plea was held a justification in trespass although it did not show a lawful warrant, but was properly confined to the right of a judge to protection. In *Garnett* v. *Ferrand*, 6 Bar. & Cr. 615, a coroner who removed the plaintiff from the room in which he was holding an inquest was held justified on the ground that he acted in his

judicial capacity. KELLY, C. B. in *Scott* v. *Stamfield*, L. R. 3 Ex. 220, says: "A series of decisions uniformly to the same effect, extending from the time of Lord Coke to the present time, establish the general proposition, that no action will lie against a judge for any acts done or words spoken in his judicial capacity in a court of justice."

This was an action for slanderous words, but the principle involved is the same, and hence the cases is in point. In *Kemp* v. *Neville*, 10 C. B. (N. S.) 523, the same rule is declared by ERLE, Ch. J. In *Munster* v. *Lamb*, decided by the English Court of Appeals, July 3, 1883, reported in 28 Alb. Law Jour. 445, the same immunity from action for slanderous words spoken in the trial of a court was extended to counsel.

In this country the rule is uniformly laid down in the same way.

In *Grove* v. *Van Duyn*, 44 N. J. Law, 656, BEASLEY, Ch. J., says: "The doctrine that an action will not lie against a judge for a wrongful commitment, or for an erroneous judgment, or for any other act made or done by him in his judicial capacity, is as thoroughly established as are any other of the primary maxims of the law." This case goes on the ground of privilege. In *Bradley* v. *Fisher*, 13 Wall. 335, the Supreme Court of the United States hold the same way. In *Lange* v. *Benedict*, 73 N. Y. 12, the Court of Appeals adopt the same view. To the same effect, *vide Reid* v. *Flood*, 2 Nott. & McC. 168; *Thompson* v. *Lyle*, 3 W. & S. 168; *Brodie* v. *Rutledge*, 2 Bay, (S. C.) 69; *Yates* v. *Lansing*, 9 Johns. 395; *Pratt* v. *Gardner*, 2 Cush. 69.

In *Dunham* v. *Powers*, 42 Vt. 1, this doctrine of privilege from action was extended to jurors.

Indeed, the doctrine may be said to be of universal application to all persons concerned in judicial proceedings, and has grown up from the necessities of the case. In the balance of convenience it is better that an occasional individual wrong be suffered, than that a general public benefit be lost. *Salus populi suprema lex.* It extends to members of the legislature by Constitutional enactment: Const. Vt., Art. 14; to ambassadors

and public ministers, and quasi-judicial officers, like clergymen, acting in matters of church discipline: *Shurtleff* v. *Stevens,* 51 Vt. 501; *Farnsworth* v. *Storrs,* 5 Cush. 512; and to numerous other officials, whose duties call them to act in a judicial capacity.

In this State the defence of judicial privilege has never been distinctly raised in any reported case. It is a special defence, and must be specially urged to be available.

In *Wright* v. *Hazen,* 24 Vt. 143, the joint plea of .the justice and party to .the suit was bad as to one, and therefore ill as to both; and the case stood for defence upon the ground of estoppel.

In *Courser* v. *Powers,* 34 Vt. 517, the defendant had never taken the official oath. He was not a justice then, but a layman. In *Merrill* v. *Thurston,* 46 Vt. 732, the warrant was issued in a matter over which the justice had no jurisdiction, general or special. He was a mere volunteer, issuing his warrant without any preliminary call upon him. But in this case the question of judicial privilege was not raised by court or counsel. *Aiken* v. *Richardson,* 15 Vt. 500, was *scire facias* against bail. This question obviously could not be involved. *Carleton* v. *Taylor,* 50 Vt. 220, was trespass by the bankrupt against the petitioning auditor. If the District Judge had been defendant the case would have value as authority. Cases where a *capias* has wrongly issued against resident citizens are not in conflict with the position herein taken. A *capias* may issue if an affidavit be first filed setting forth the party's belief that the defendant is about to abscond. Authority under such circumstances is given the justice to act. But this authority cannot be exercised until legally invoked. An oath in writing must be filed as the ground and basis for the exercise of such authority. These cases then are in perfect keeping with the doctrine contended for by the minority, namely : when jurisdiction to act at all is given to the judge, and his jurisdiction is invoked by one having the right to invoke it, then his action is privileged. But if he acts " of his own head" it is otherwise. If the affidavit is not first filed in cases referred to, the justice acts " of his own head." Supposing

Walker *v.* Burlington.

the affidavit is defective in *form*, has it ever been decided that the justice is liable if he issues a *capias ?*

As no cases in this State or elsewhere have been found that support the majority conclusion in this case, I feel warranted in protesting against the conclusion which the court has reached, and in this protest Judge VEAZEY joins.