CLARA L. SMITH, PROSECUTOR-APPELLANT, v. MAY M. CARTY, AGNES CROMWELL, MARIE HILSON KATZEN-BACH, DANIEL H. MOREAU, OSCAR W. JEFFERY, JOSEPH MOTT, D. STEWART CRAVEN, LYMAN F. MORE-HOUSE, GUSTAV A. HUNZIKER, MAROU BROWN LIT-TLE, CHARLES H. ELLIOTT, SECRETARY, COMMIS-SIONERS OF THE STATE BOARD OF EDUCATION OF THE STATE OF NEW JERSEY, RESPONDENTS-APPEL-LEES.

Argued February 2, 1938—Decided April 29, 1938.

For the prosecutor-appellant, *Louis Dworetz* (*Paul Rittenberg,* of counsel).

For the respondents, *Harold D. Green.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is an appeal from a judgment of the Supreme Court dismissing a writ of *certiorari* obtained by the appellant to review her dismissal as a teacher in the public schools of the city of Paterson. For an adequate discussion of the points involved in this case a somewhat detailed exposition of the facts is essential.

In a complaint dated April 9th, 1933, the Guiana Realty Corporation (a company which, among other things, made a business of lending money to school teachers and others with an assured income), by William Sherrill, its president, charged that the appellant, Clara L. Smith, was guilty of misrepresentation and fraud in making application to the company for a loan of $500; that she failed to repay the loan as agreed; that she sent the lender worthless checks; that she stated, in writing, that she was not indebted to anyone save a building-loan association and as endorser on a note for $200, when in fact she was indebted to many persons and institutions; that she attempted to secure a loan of $1,000 from one Walker, representing to him that complainant's loan had been paid when in fact it was not paid. The complainant prayed that Clara L. Smith, because of her "apparent dishonesty, lack of integrity, cunningness, inability to tell the truth, mischievousness," &c., be removed from her position as teacher of the public schools of the city of Paterson "as a person wholly irresponsible and morally unfit to teach * * * the children under her direction."

The board gave appellant a hearing on these charges on April 26th, 1933, and May 10th, 1933, on which later date Miss Smith was ordered suspended until February 1st, 1934, without pay, after which date she might apply for reinstatement. She applied for reinstatement on February 6th, 1934, and on May 10th, 1934, was dismissed. Miss Smith appealed

the judgment of dismissal to the commissioner of education, who, on September 25th, 1934, without considering the merits of the case, held that the dismissal was illegal "for the reason that she did not have a fair trial because one of the board members, who was absent on certain evenings during the trial, participated in adjudicating her case."

The local board of education received the judgment of the commissioner of education at its meeting on October 11th, 1934, and at the same meeting the same charges, redrafted and dated October 9th, 1934, were filed by the complainant. A hearing thereon was held later in the month and Miss Smith was adjudged guilty and dismissed. This judgment, on appeal to the commissioner of education, was affirmed on February 8th, 1935, and on further appeal to the State Board of Education was affirmed on July 20th, 1935, by that tribunal.

The Supreme Court granted its writ of *certiorari* to the appellant to review the judgment of the State Board of Education. When the writ and the return came into the Supreme Court the respondent moved to dismiss the writ on the ground that before the writ was allowed the prosecutor (appellant) had applied for and received the full proceeds of moneys accredited and available to her in the teachers retirement fund and that, therefore, by her withdrawal of these funds, she acquiesced in the action of the school board in dismissing her, abandoned her status as a teacher, and therefore was estopped from reviewing the adverse judgment affirming her dismissal. The Supreme Court considered that the contention of the respondents was sound and dismissed the writ.

The judgment of the Supreme Court was based on its conception of certain paragraphs of sections 249 and 251 of the School law. *Pamph. L.* 1919, *ch.* 80; *Rev. Stat.*, 18:13-37; 18:13-64. These sections read as follows:

"Section 249 (2 * * * Class A) All persons who become teachers after the first day of September, 1919, and whose appointment is made subsequent to the passage of this act, shall become members of the Retirement System by virtue of their appointment as teacher; * * *."

"Section 251 (11) A contributor who withdraws from the service or ceases to be a teacher for any cause other than death or retirement, shall be paid on demand the accumulated deductions standing to the credit of his individual account in the Annuity Savings Fund."

The rationale of the decision of the Supreme Court is "that by drawing her proportion of the fund, and failing to contribute to it for the period intervening between her dismissal and the application for the writ of *certiorari*, she automatically ceased to be a teacher in the public schools of the city. That she consequently is without standing as a teacher by virtue of her own act, and this makes it unnecessary to consider the sufficiency of the action taken leading to her dismissal."

This legal conclusion, we think, is erroneous. These two elements—non-contribution to the fund, and withdrawals of contributions made—do not support the conclusion that the teaching status was abandoned because either or both these elements were present. The statute does not enact that such forfeiture will result. Contributions to the fund are made in accordance with the statutory plan (section 253, paragraphs 1 to 8; *Rev. Stat.*, 18:13-72 to 18:13-79). The contributions are deducted from *salary*, and the appellant received no salary. The statute makes no provision for the payment of contributions in any other way except as a deduction from the teacher's compensation.

It will be noted that the statute also provides (section 249, paragraph 7; *Rev. Stat.*, 18:13-41) that the membership of any person in the retirement system ceases when such person shall have been constantly absent without pay for more than two years. That was the situation here. So, therefore, the failure to contribute for two years *de facto* ended her membership in the fund. Her withdrawal of her contributions did not lend further efficacy to the fact that she became a non-member thereby. The statute so provided. The appellant was suspended on May 10th, 1933, and has never been reinstated. The record discloses that on November 14th, 1935, the appellant was advised by the assistant secretary of

the teachers' pension and annuity fund that her active membership in the fund ended April 30th, 1933 (the date of her last contribution) and that her (inactive) membership expired on May 1st, 1935. The termination of her membership sprung from the statute.

The other section of the statute (section 251, paragraph 11), upon which the judgment of the Supreme Court was premised, provides that accumulations shall be paid to one "who withdraws from services or ceases to be a teacher," &c. The appellant did not withdraw from the service. She was dismissed. Nor did she cease to be a teacher in any voluntary sense. Rather she was prevented from fulfilling her contract as teacher because of the judgment of the board, first suspending and later dismissing her.

Our view that the withdrawal of contributions is not the equivalent of abandoning the status of teacher is strengthened by a consideration of a further provision of this same statute, *supra* (section 251, paragraph 12; *Rev. Stat.,* 18:13-66), which clearly contemplates the legislative plan for re-entry into the retirement fund. Furthermore, the parties have stipulated in an agreed state of facts, which was submitted to the Supreme Court at the time motion was made to vacate the *allocatur,* that "the prosecutor has consistently contested the right of the board * * * to suspend and dismiss her" * * *; further, that the sole reason for withdrawing her contributions was to pay her bills and to finance the prosecution of this appeal; further, that the appellant never had any intention of abandoning "this proceeding or any proceedings in which her ouster as a teacher," was concerned, &c. This stipulation completely negatives the thought that the appellant relinquished her status, and, as a matter of law, we cannot agree that the failure to contribute for the statutory period, and the withdrawal of contributions under the circumstances here exhibited, amount to an abandonment of the status of teacher. Such construction is a harsh one, would tend to support forfeiture, which is never favored at law, and could well lead to serious injustice. If it was the intention of the legislature that such result should obtain,

the statute might have so provided. If this is a *casus omissus* the legislature must supply the remedy. A law court cannot supply it.

The question now arises as to whether this court should not pass upon the merits of the case, as the Supreme Court would have done had it not dismissed the writ for the reason assigned. Such action by this court will end the litigation, which is always desirable. The case is not one for remitting back to the Supreme Court since the record of the facts is before us in all its details. That it is proper practice for us, after pointing out the legal error in the Supreme Court judgment, to pass upon the merits of the case is, we think, soundly established. *Hoxsey* v. *City of Paterson,* 39 *N. J. L.* 489. See, also, the earlier case, *Garr* v. *Stokes et al.,* 16 *Id.* 403. "Where a writ of *certiorari* is erroneously dismissed by the Supreme Court on final hearing, the Court of Errors and Appeals will not merely review the judgment but will render such judgment of affirmance or reversal of the proceedings brought up by *certiorari* as the Supreme Court should have given upon the merits." *Passaic* v. *Gross,* 99 *Id.* 409.

We turn now to a general discussion of the facts.

The appellant, Clara L. Smith, borrowed money from the Guiana Realty Corporation and in connection therewith, it is charged, presented a letter purporting to be signed by Lewis A. Bennert, general supervisor of the board of education of Paterson, stating, among other things, the amount that stood to the credit of Miss Smith in the teachers' pension and annuity fund. Mr. Bennert testified that the letter was not signed by him. He admitted, however, that interdepartmental communications went out over his signature from time to time. The charge was that the appellant had forged the Bennert signature. In our view, this charge was not proved. But this does not end the matter of the letter in question. The appellant is also charged with misrepresentation and fraud in the matter of obtaining the loan, and the Bennert letter is an important element in these charges. The appellant denies that she ever presented such a letter to the lender. As against this, we have the testimony of Sherrill,

president of the lending company; Daisy Hawkins, his stenographer or bookkeeper, who assert that the appellant did present the letter; Manuel Sparks, who witnessed an assignment in connection with the loan and testified that at the time of witnessing same he saw the letter in question in the possession of the appellant; Mr. Thien, vice-president of the Dunbar Bank, upon which the moneys loaned to Miss Smith were drawn, who testified that the appellant and Sherrill conferred with him concerning the making of the loan for perhaps three-quarters of an hour at his bank, at which time the appellant produced the letter in question. This testimony on the part of Thien, apparently a disinterested witness, the appellant categorically denied and further said that at the time in question she had never met him.

Our conclusion is that the witnesses for the prosecution proved, by the weight of evidence, that the appellant presented the paper in question in connection with her application to borrow money.

It is next charged that she forged, or caused to be forged, the signature of Benjamin Thomas on the promissory note as a co-maker. The note was presented at the hearing and the witness, Thomas, testified that he did not sign the note and that the signature was spurious. On the matter of the note the testimony was that the lender asked the borrower to obtain the signature of a New York resident as co-maker of the note; that Miss Smith went to the business place of Thomas and returned with his signature. From this it does not follow that the appellant forged the name of Thomas or inspired the forgery. It appears, however, that she admittedly undertook to have Thomas sign the note. At a previous hearing of this case before the Paterson Board of Education she testified that he did sign it. At the present hearing, her testimony is somewhat different. She now says she did not see him sign it.

It also appears that on the application for the loan she made certain representations about her financial condition and her outstanding obligations. The testimony indisputably shows that she either misstated the facts or was guilty of concealing the facts which the lender had a right to know.

The appellant, except for some character witnesses, was the only witness for the defense. Our reading of the testimony convinces us that other witnesses, acquainted with many of the facts in the case, might have been called by the appellant, notably Florence A. Smith, her sister, and Ella L. Smith, her mother.

The attitude of the appellant at the hearing on these charges was neither helpful nor one calculated to inspire confidence in the testimony that she gave. She was evasive, hairsplitting, defiant and recalcitrant. At several points in the testimony she refused to answer pertinent questions of cross-examining counsel. Her story that she was being persecuted has no substance. It is because she charges persecution that we have gone into detail of discussion on the facts. The motive inspiring the lender—and the appellant ascribes ulterior, vicious motives to him—may have been all that the appellant says they were. But his motives are not material and cannot be imputed to the board of education. The question is: Were the charges proved? We believe that the finding of the board of education that the appellant was guilty of "misrepresentation and fraud in the making of the application for the borrowing of $500 from the Guiana Realty Corporation" and that thereby she was "guilty of conduct unbecoming a teacher," was justified from all the evidence in the case. This finding of fact was affirmed by two reviewing tribunals on plenary and persuasive evidence to support it. Our examination of the facts might well have ended when we reached the conclusion that the fact findings below were grounded on a rational basis (*Reilly* v. *Jersey City,* 64 *N. J. L.* 508; *Crane* v. *Jersey City,* 90 *Id.* 109; *Martin* v. *Smith,* 100 *Id.* 50, 52), but we have examined them anew, uninfluenced by the conclusions below, because of the appellant's claim that she was the victim of oppression and discrimination.

The appellant further urged that the local board of education had no jurisdiction to try this case for the reason that the decision of the commissioner of education, in the first instance, reversing the judgment on the ground that one of the members of the board, who had not heard all the testi-

mony, participated in the vote, made the case *res judicata.* There is no merit in this contention. The commissioner of education did not pass on the merits of the case. He was careful to point out that fact in his memorandum. The judgment of the local board was set aside by the commissioner for a technical irregularity or an error at law. It cannot be seriously urged that because a judgment, either civil or criminal, is set aside for an error of law that a bar to a retrial results. See *Freudenreich* v. *Fairview,* 114 *N. J. L.* 290; 34 *Corp. Jur. p.* 793, ¶ 1210; *p.* 1063, ¶ 1501.

It is next argued that the matters set forth in the complaint of October 9th, 1934, are cognizable only in a court of civil jurisdiction. We perceive no merit in this point. The argument is that since the appellant had been indicted, tried and acquitted in the New York courts for forgery and kindred offenses, that that ends the matter, and the party complainant should be left to the remedy available in the law courts for collection of the debt. This does not follow. The public has an interest in the charges, but no interest in how or where the complainant collects its debt. It is suggested in the argument under this point, though not stated in express words, that because the criminal prosecution in New York ended in the acquittal of Miss Smith that therefore the charges of fraud and the like were eliminated by a court of competent jurisdiction and are groundless. This is not true. It is another way of saying that the matter is *res judicata.* The point is completely settled but, none the less, we again point out that an acquittal on a criminal charge is "merely * * * an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." *Lewis* v. *Frick,* 233 *U. S.* 291, 302. Compare *Stone* v. *United States,* 167 *Id.* 178, 188; *Murphy* v. *United States,* 272 *Id.* 630, 631, 632. The rule in all other cases at law is less exacting. In addition, it is obvious that the issue before the tribunal below in this case is not the same as that tried in the criminal courts of New York, and, even if it were, the acquittal would not be a bar to the trial of these charges. See *Freudenreich* v. *Fairview, supra;* compare *Beggans* v. *Jersey City,* 10 *N. J. Mis. R.* 1142.

It is urged that the complainant, Guiana Realty Company, was guilty of laches in presenting these charges against the appellant. There is no merit in this point. The matters and things complained of occurred in September and October of the year 1932, and these charges were first presented on April 8th, 1933. Again, it seems rather clear that delay on the part of the complainant in presenting the charges to the authorities in the local school district could not in any way be chargeable to the local board of education.

It is further argued that material and pertinent evidence was rejected at the hearing before the board of education. All of the questions concerning the corporate structure and personnel of this foreign corporation, complainant, were clearly immaterial to the issue. We perceive no substance in this point.

It is also said that the board erred in sustaining an objection to a request that Sherrill write "Lewis A. Bennert" on a sheet of paper. We find no merit in this reason for reversal since no foundation was laid for the request and no charge made that Sherrill had forged the name in question.

Counsel for the appellant very earnestly argues the facts in his brief in an endeavor to show that his client should have been acquitted of the charges, and his argument is directed at the weaknesses in the testimony of Sherrill, which are very apparent to us. If the fact finding was based on his testimony alone the result reached might well have been otherwise, but counsel omits discussing the damaging evidence on the charges involved given by five or six additional witnesses for the prosecution.

The judgment dismissing the writ of *certiorari* will be affirmed, but not for the reasons which prompted the court below to dismiss the writ.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, HEHER (concurs in result but not in the opinion), PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ.   13.

*For reversal*—None.