### In re Petitions of John Davenport, Charles Baker, Susan A. Carpenter

[283 A.2d 452]

Nos. 118-70–120-70

Present: **Holden**, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 5, 1971

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Petitioners Davenport and Baker.

*Stebbins & Bradley,* and *Michael L. Slive,* Hanover, for Petitioner Carpenter.

*John Parker,* Springfield, for Petitionees.

**Holden, C.J.** The petitioners are school teachers. By separate applications to this Court for writs of *certiorari,* they seek review of the action taken by the superintendent and board of school directors of the Hartford School District which resulted in their suspension, and subsequent dismissal, from the faculty of the Hartford high school. The action sought to be reviewed was taken by the school officials under the provisions of 16 V.S.A. § 1752.

· While the specification of charges and the board's findings, as they relate to each petitioner, vary in some respects, the procedures followed in each case are the same. The matters relating to each of the petitioners were combined for hearing and all share in a common record.

It appears from the record, which accompanied the answer to the petitions, that the complainants were engaged by contract as teachers in the Hartford high school for the 1969–1970 school year. The proceedings which they call upon us to review culminated from events set in motion on May 7, 1970. On that day there was a student walkout and demonstration at the high school building and grounds during regular school hours, at a time assigned for class instruction.

As a consequence of this episode, the Hartford school board met on the evening of May 7th and again on the following afternoon. At the later meeting it was unanimously voted to instruct the superintendent of schools to suspend Charles Baker, John Davenport and Mrs. Susan A. Carpenter for non-compliance with their contracts under the provisions of 16 V.S.A. § 1752(b). On May 9, 1970, the defendant Harrison, the superintendent of schools, notified the petitioners Baker and Davenport of their suspension by the following communication:

> "You are hereby notified that you have been suspended from your teaching duties at Hartford High School as of May 9, 1970.
>
> "You are being suspended for failture (sic) to attend to duties, failure to carry out reasonable orders and directions of the principal, Superintendent and School Board, a proper ground under the provisions of the Title 16, Section 1752, Chapter 53 of the Vermont Statutes Annotated.
>
> "Provisions under the above law provide for your right of appeal."

A similar notice was directed to Mrs. Carpenter. Her suspension was for "conduct unbecoming a teacher." The notice also informed her of a right to appeal under the statute. Mrs. Carpenter acknowledged receipt of the notice on May 11th and referred to the reason given for her suspension. In this communication she informed the clerk of the school board of her

right to be fully informed of the charges against her and lodged her protest at the insufficiency of the reasons given. She notified the board that she exercised her right to an appeal under 16 V.S.A. § 1752(d) and demanded a public hearing with a stenographer to transcribe the testimony to be given at the hearing.

The petitioners Baker and Davenport, by their attorney, on May 13th, notified the school board, through its clerk, that they appealed the suspension to the board of school directors for a review of the superintendent's decision. They also made similar requests that the hearing be public and that stenographic services be provided. On the following day they requested specific information, in writing, of the facts constituting the grounds for their dismissal. As will later appear, the requests for specification of the charges were complied with.

All of the petitioners received acknowledgements of their respective appeals. All were notified that hearings would be held on May 20, 1970. The hearings were not held on the date scheduled for the reason that on May 19 the petitioners applied to the United States District Court for injunctive relief against the defendants from proceeding further in the matter. The federal court withheld the relief requested, pending an administrative determination by the Hartford school board.

The three appeals were rescheduled and heard by the board on June 23 and 24, 1970. Each of the petitioners appeared in person, were represented by counsel and testified in their own behalf. The petitionee Harrison, superintendent of the Hartford schools, was also represented by counsel. The board made written findings of fact in each appeal which concluded with an order of dismissal as to each of the teachers concerned. The present applications followed.

■ Since the petitions for review have been challenged by the defendants' motion to dismiss, we deal with that question first. The motion is founded on the proposition that the rights and duties of the petitioners are governed by their teaching contracts. It is said the prevailing statute neither enlarges nor restricts the basic contractual rights of the teachers with their employer, nor are their legal remedies affected. The legislative history and the substantive and procedural aspects of

the 1963 amendment of 16 V.S.A. § 1752 demonstrate the argument to be unsound.

Prior to 1963, this section provided:

> "§ 1752. Noncompliance with contract; dismissal
>
> A teacher under contract to teach in a public school, who fails, without just cause, to complete the term for which the teacher contracted to teach, shall be disqualified to teach in any public school for the remainder of the school year. A superintendent may dismiss a teacher who, in his judgment, is incompetent or unfit for the position. Such dismissal shall be in writing and one copy shall be given to the teacher and one to the chairman of the board of school directors; and thereupon such teacher's contract shall be void, but he shall be paid pro rata to the time of his dismissal."

The 1963 amendment retained only the first sentence of the former statute and added subsections (b) through (j). 1963, No. 132. The enactment added:

> "§ 1752. Grounds and procedures for suspension and dismissal
>
> \* \* \*
>
> (b) A superintendent may suspend a teacher under contract on the grounds of incompetence, conduct unbecoming a teacher, failure to attend to duties or failure to carry out reasonable orders and directions of the superintendent and school board.
>
> (c) The suspension shall be in writing and shall set forth the grounds therefor. Copies shall be delivered to the teacher, and to the chairman and to the clerk of the board of school directors. Thereafter, performance under the teacher's contract shall be suspended, but he shall be paid pro rata to the time of his dismissal by the board.
>
> (d) The teacher so suspended shall have the right to appeal to the board of school directors of the district for review of the decision. Filing a written notice of appeal with the clerk of the school board within seven days of the effective date of the suspension shall initiate the appeal. The clerk of the board shall forthwith forward

a copy of the notice of appeal to the superintendent and send to the teacher an acknowledgment of receipt of the appeal.

(e) The school board to which the appeal is directed shall hear the appeal within ten days of receipt of notification. The teacher and the superintendent shall be advised by the clerk of the board of the time and place of hearing by written notice at least three days before the date of hearing.

(f) All parties shall be entitled to counsel at every stage of the proceedings established by this section. Hearings shall be in executive session, unless the teacher making an appeal requests or agrees in writing that they be open to the public. A teacher making an appeal may waive in writing his right to a hearing.

(g) Upon hearing, or if no appeal is taken, the school board shall affirm or reverse the suspension or take such other action, including dismissal, as may appear just. If the suspension, or the dismissal, is reversed, the teacher shall not suffer any loss of pay, retirement benefits, or any other benefits to which he would otherwise have been entitled.

(h) The decision of the school board shall be in writing and filed with the clerk of the school board not later than five days after the hearing or after the time for taking an appeal has expired. The clerk shall within three days notify the superintendent and the teacher in writing of the decision.

(i) No action at law shall lie on the part of a teacher against any school district for breach of contract by reason of suspension or dismissal unless the procedures herein described have been followed by said teacher.

(j) Every teacher's contract shall be deemed to contain the provisions of this statute and any provision in the contract inconsistent with this statute shall be considered of no force or effect."

██ ██ The procedures established to afford a suspended teacher the right to appeal his suspension, are judicial in nature. By this enactment, the Legislature has enlarged the traditional functions of the school boards, as administrative

agencies, to include the power to try and determine questions of fact and apply the statute according to the facts as they find them to be. Within this limited area, they are entrusted with quasi-judicial power. *Trybulski* v. *Bellows Falls Hydro-Electric Corporation*, 112 Vt. 1, 7–8, 20 A.2d 117 (1944). Absent other methods of appeal, important questions of law, unlike issues of fact, are subject to review on *certiorari*, as provided in 4 V.S.A. § 2. *Davidson* v. *Whitehill*, 87 Vt. 499, 507–509, 89 A. 1081 (1914). The motion to dismiss is denied.

■ That is not to say the writ will be granted as a matter of right. Its issuance is largely discretionary according to the merits of the case made by the petition and the record. *Emrick* v. *Connarn*, 128 Vt. 202, 260 A.2d 380, 382 (1969); *Petition of Mallary*, 127 Vt. 412, 415, 250 A.2d 837 (1969); *Rutland Hospital, Inc.* v. *State Board of Health*, 126 Vt. 41, 44, 220 A.2d 722 (1966); *Chase* v. *Town of Rutland*, 47 Vt. 393, 398 (1875).

■■ Preliminary to consideration of the questions of law presented by the petitioners, we must recognize and accept the established doctrine that rights protected by the First and Fourteenth Amendments to the Constitution of the United States extend to the nation's educational systems with application to students, teachers and administrative officers alike. *Tinker* v. *Des Moines Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, 738 (1969); *Shelton* v. *Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231, 236 (1960); *Adler* v. *Board of Education*, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517, 524 (1952); *West Virginia State Board of Education* v. *Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628, 1635 (1943). This concept is implicit in the subsections added to 16 V.S.A. § 1752 in 1963 governing contracts between teachers and boards of school directors. It is plain from the text of the enactment that the amendment is obedient, rather than derogatory, to this concept.

The petitioners join in the common claim that they have been denied an impartial hearing. Actual prejudice is neither shown nor claimed. However, they object that the board's participation in their suspension deprived them of a fair hearing on their appeal. It is said that this was a denial of constitutional due process.

■ The requirements of constitutional due process do not demand a perfect system of justice. *Owenby* v. *Morgan*, 256 U.S. 94, 110–111, 41 S.Ct. 433, 65 L.Ed. 837 (1921); *Vermont Electric Power Co., Inc.* v. *Anderson*, 121 Vt. 72, 85, 147 A.2d 875 (1959). And the legislative combination of administrative and judicial functions in one agency of government have often presented problems of impartiality. *Vermont Electric Power Co., Inc.* v. *Anderson, supra*, 121 Vt. at 84. Of necessity, in such enactments there will be some mixture of administrative and judicial authority. This is permissible when the combination is incidental to the primary governmental function of the administrative body. *Trybulski* v. *Bellows Falls Hydro-Electric Corp., supra*, 112 Vt. at 6–7.

■ The primary function of the board of school directors at the time of the events under investigation was the control and management of the schools within its jurisdiction. 16 V.S.A. § 6. (Repealed July 1, 1970.) See 16 V.S.A. § 563. 1969, No. 298 (Adj. Sess.) eff. July 1, 1970. In the performance of this authority, the Legislature has constantly strengthened the hands of school directors. *Buttolph* v. *Osborn*, 119 Vt. 116, 119, 119 A.2d 686 (1955).

■ ■ We are in full accord that the teachers involved in these proceedings were entitled to a full, fair and impartial hearing before a tribunal that entertained no bias against them. *Emerson* v. *Hughes*, 117 Vt. 270, 279, 90 A.2d 910 (1952); *Leonard* v. *Willcox*, 101 Vt. 195, 213, 142 A. 762 (1928). Where actual prejudice exists to the point of precluding an unbiased hearing, no rule of necessity will supplant a constitutionally protected right. *State* v. *Jurras*, 97 Vt. 276, 122 A. 589 (1923); *Sharkey* v. *Thurston*, 268 N.Y. 123, 196 N.E. 766, 767 (1935).

■ Prior involvement in the subject matter of the hearing, of itself, will not work a judicial disqualification. And a claim of prejudgment founded on prior participation will not oust the only tribunal that has the authority to act in the premises. *Board of Medical Examiners* v. *Steward*, 203 Md. 574, 102 A.2d 248, 252 (1954). Courts cannot assume in advance that an administrative hearing will be unfairly conducted. This holds true even though the hearing is by the same author-

ity that preferred the charges. *Fahey* v. *Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030, 2040 (1947).

■■ Absent a legal disqualification, the existence of disqualifying prejudice becomes a question of fact. *State* v. *Jurras, supra,* 97 Vt. at 280. Our examination of the transcript yields up no indication of bias to preclude the board from conducting an impartial hearing.

The petitioners sought the service of 16 V.S.A. § 1752 to appeal their suspensions. The procedural protection of the statute has been accorded them. In this posture they stand on common ground to challenge the provisions of 16 V.S.A. § 1752 (b) as unconstitutionally vague and overbroad against freedoms protected by the First and Fourteenth Amendments.

We might respond, in the words of Justice Brandeis, that "[t]he Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefit." *Ashwander* v. *Valley Authority,* 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936); *United Fuel Gas Co.* v. *Railroad Commission,* 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390, 395 (1929) ; *Eliason* v. *Wilborn,* 335 Ill. 352, 167 N.E. 101, 68 A.L.R. 350, 355 (1929), aff'd 281 U.S. 457, 50 S.Ct. 382, 74 L.Ed. 962 (1930).

■ We conceive it to be our duty, however, in *certiorari* applications where invasion of fundamental freedoms are claimed, to examine the full record. *Edwards* v. *South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697, 702 (1963). From this, it is the Court's concern to determine whether the statute, as applied to the conduct of these teachers, infringes upon rights of free speech, assembly and freedom to petition the government, contrary to the First Amendment. See *Swart* v. *South Burlington Town School District,* 122 Vt. 177, 184, 167 A.2d 514 (1961).

*Susan A. Carpenter*

The charges presented against Mrs. Carpenter are that she solicited signatures for a petition from the faculty and students of the high school. After the signatures were procured, it is charged that the appellant changed the substance of the petition which was not in context with the intention of the signers. It is asserted that she made inconsistent and untrue

statements concerning her participation in the procurement of the petition, made unauthorized use of a copying machine and neglected her teaching duties during certain periods of time on May 7, 1970. Lastly, it was claimed that she erroneously advised pupils and teachers that she had been fired by the principal, knowing this assertion to be false.

The evidence presented in support of the charges was subject to opposing inference and was sharply controverted by Mrs. Carpenter and the several witnesses who testified in her defense. With some equivocation, the board found against the appellant on all of the charges except as to unauthorized use of the copying machine. The findings conclude that "Susan Carpenter has conducted herself in a way that constitutes conduct unbecoming to a teacher . . . ," as designated under 16 V.S.A. § 1752, and ordered her dismissal.

The core of the charges is Mrs. Carpenter's "involvement and participation in the formation of a petition circulated among the faculty and students of Hartford High School during the week of May 4, 1970." This is confirmed in the findings. Although the findings are silent on the text of the petition, the transcript of the hearing establishes that the writing was addressed to the Hartford school board. It was drafted and prepared by three Hartford high school students, with the assistance of Mrs. Carpenter on May 5, 1970. Although the petition was not included in the record certified to the Court, it appears that it requested permission from the school board to procure school release time for the purpose of having a symposium or class discussions in protest of the nation's involvement in Southeast Asia, in general, and Cambodia, in particular. Apparently the petition requested that students from Dartmouth College be permitted to participate in the program.

Mrs. Carpenter delivered the petition to the principal of the high school, Mr. Dale Berne, for presentation to the school board. The petition was denied by the school board at an evening meeting on May 6. Before Mrs. Carpenter was informed of this action, the principal gave permission for three Dartmouth students to engage in discussion during Mrs. Carpenter's first period English class on May 7. Mr. Berne attended the class. When the class was over, the principal summoned Mrs. Carpenter to his office. He then informed her that the school board

had denied the petition. Mr. Berne was asked on direct examination concerning this event.

"Q. Now, going to the meeting that you had during the second period on May 7th, at any time during that meeting did you explain to her that she could expect disciplinary action on the part of the board?

A. No.

Q. Did you use the term disciplinary action at all?

A. The term disciplinary action—I did say to her that I would hope that her involvement with the students would not continue today or any other day. I stated to her that if she continued to be continually involved in churning them up that I would make a recommendation along the way for some sort of disciplinary action and I said to her and I said to both of the gentlemen there as well that I hope that day will never have to come; that you will be a responsible person as I believe you are and do a good job of teaching which you are capable of and I asked her if she understood everything that was being said there. She said she did and she said that she would go back and teach her class.

Q. Did you tell her that the board was displeased with her involvement with the students and concerned with her involvement?

A. No, I told her that I—at that time—said to her the petition that she submitted to me had been denied by the school board the night before. I had mentioned that the school board had instructed the superintendent and myself to sit down with her and talk about her involvement with the students but that was, in fact, what we were instructed. As far as penalties, punishments, or anything else, it was not stated by me because it was not stated by the school board. It was I suppose I'd call it more of a probing action. We will sit down and talk with her and hope that, as the superintendent said, we can get her to continue to work positively."

On cross-examination, Mr. Berne was asked to explain his meaning of "involvement." His answer—"In the case of Mrs. Carpenter, involvement here would take more of a negative,

rather than a positive, sense. Very simply, involving yourself with the student petition."

The charge of neglect in her teaching duties stems from her absence from class while in conference with the principal and later, with the assistant superintendent, concerning the threat of disciplinary action and possible discharge from the faculty. It appears that these class periods were covered by other teachers.

Without further elaboration on the evidence, it is abundantly clear that Mrs. Carpenter's involvement with the petition lies at the root of the disciplinary action. The record establishes that her participation in the petition, and the events which followed in its wake, constitute the procuring causes of the board's action and led to its conclusion that the appellant's conduct was "unbecoming to a teacher."

The right "to petition the Government for the redress of grievances . . ." is guaranteed by the Bill of Rights, U.S. Const., Amend. I. It is safeguarded in the Declaration of Rights of our state constitution. Vt. Const., Ch. I, Art. 20.

██ ██ Chief Judge (then Assistant) Royall Tyler observed that persons irritated and annoyed by a petition "may conceive the right to be eligible for destruction." Not so, said the Court, in holding a libelous petition privileged from civil suit. The opinion goes on to state " . . . if this right of petitioning for a redress of grievances should sometimes be perverted—the right of petitioning with impunity is established both by the common law and our declaration of rights, the abuse of the right must be submitted to in common with other evils in government, as subservient to the public welfare." *Harris* v. *Huntington*, 2 Tyler 129, 140, 146 (1802). There is no claim of abuse in the present case. And although the subject of a petition may deviate from the views of others or may engender controversy, we must bear that risk. *Tinker* v. *Des Moines Community School*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, 739 (1969). Fundamental freedom thus protected cannot be stifled in the name of statutory language that affords no guidance against the conduct condemned. *Edwards* v. *South Carolina, supra,* 9 L.Ed.2d at 697.

██ The term "conduct unbecoming a teacher" is imprecise and apparently used to cover disqualifying conduct

not otherwise specifically forbidden in the statute. See *Beilan* v. *Board of Education*, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414, 1420 (1958). In serious misconduct that is unprotected by constitutional safeguards, it has been validly, and we think properly, applied. See *Smith* v. *Carty*, 120 N.J.L. 335, 199 A. 12, 16 (1938).

Our examination of the record indicates that the conduct assigned to the appellant does not reach such dimensions. There is nothing to indicate the conduct charged against this teacher collided with the school regulations nor the rights of other students or teachers.

■■■ Mrs. Carpenter had no notice from the statute, or otherwise, that her involvement with the petition of students and faculty would compose "conduct unbecoming a teacher." Since the dismissal relates inextricably to the exercise of the appellant's right to petition, the board of school directors was without authority to direct her dismissal for such participation.

*Petition of Susan A. Carpenter is sustained and the issuance of the writ of certiorari is ordered. The order of the defendants, directing the dismissal of Susan A. Carpenter, is vacated. Let the result be certified to the defendants and to the Commissioner of Education.*

John Davenport and Charles Baker

The record certified on the application of John Davenport and Charles Baker indicates that Mrs. Capenter's confrontation with the principal at the Hartford high school on the morning of May 7th generated widespread rumors that she had been or would be dismissed from the faculty. Although efforts were made by broadcasts over the public address system by Mr. Berne and Mrs. Carpenter to thwart the rumors and avert a demonstration, a student walkout in protest against the Carpenter dismissal took place at two o'clock in the afternoon. Both of the teachers, Davenport and Baker, participated in this protest by joining the students in leaving the school building and assembling at a rally on the lawn. Both of these teachers refused to return to their classrooms and scheduled classes when so directed by the principal. This conduct was included in the statement of reasons for their suspension by the superintendent.

Although some of the students of these teachers remained in their assigned classrooms, both testified that they elected to join the protest of those who had rallied outside the building. This much of the evidence is undisputed and the board found accordingly. The school board also found, on ample evidence, that Principal Berne requested Davenport and Baker to return to their respective classrooms and they failed to comply with this direction.

As a result of the disruptions and unrest of May 7, the principal called a faculty meeting at three in that afternoon. Neither Mr. Davenport nor Mr. Baker was excused and neither attended.

A further charge of insubordination was asserted against the petitioner Baker. Shortly before the walkout, a study hall, supervised by this teacher, was visited by the principal. Students were standing on tables, some cheering and some booing the raising and lowering of the flag outside.

The petitioner Baker testified that Mr. Berne directed him to " '[t]ell the students to take their seats' and I replied, you are the principal, tell them yourself." Baker explained that he did not consider the principal's request to be a reasonable order.

Mr. Baker testified that during this period a student asked him if he was going to walk out. "I said, yes, I was."

The board's specific findings as to both the teachers, Baker and Davenport, are well founded on evidence that is in little, if any, dispute. The findings conclude with the determination that both of these teachers failed to attend to duties and failed to carry out reasonable "orders and directions of the Superintendent and School Board," and ordered these teachers dismissed.

The petitioners complain that their discharge for failure to carry out orders and directions cannot be sustained since the orders which were disobeyed were given by the principal, rather than the superintendent or school board, as specified in the statute. The argument is not persuasive.

It is implicit in the power confided to the board of school directors under the educational law, that authority may be delegated to subordinate school officials, including superintendents, principals and teachers. And the orders of those

subordinates directed to those under their control, whether they be teachers or students, will be recognized and enforced by the courts, provided they are reasonable and consistent with the valid policy of the board and within the limits of the statute. *Guernsey* v. *Pitkin*, 32 Vt. 224, 228 (1859). This ". . . results by necessary implication from the provision of law requiring good discipline." *Sherman* v. *Charleston*, 8 Cush. 160 (Mass. 1851) (Shaw, C.J.).

In the emergency situation which prevailed at the Hartford high school at the time under investigation, it is not open to question that orders of the principal were reasonable. It is clear that his directions were in keeping with the interests of orderly conduct of the school. There was neither time, nor an occasion, to refer the principal's decision to the superintendent and the school board for their approval and direct communication to the teachers involved.

 Unlike the Carpenter case, *supra*, the application of 16 V.S.A. § 1752(b) to the teachers Davenport and Baker does not cut across constitutionally protected freedoms. Their contractual engagement in the public schools of Hartford did not call upon them to surrender liberties of thought, speech or assembly secured by the First Amendment. *Beilan* v. *Board of Education, supra*, 2 L.Ed.2d at 1419. However, they did assume obligations of cooperation and obedience to lawfully constituted school administrative authority in the discharge of their teaching duties. And the school board had the right and duty in maintaining the integrity of the school to examine this aspect of their conduct to determine their competency to continue as teachers. *Beilan* v. *Board of Education, supra*, 2 L.Ed. 2d at 1419.

> "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." *Cox* v. *Louisiana*, 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471, 484 (1965).

· This statement in *Cox* confirms the established doctrine of many cases that the fundamental liberties, protected against state action by the Fourteenth Amendment are not absolute. *Near* v. *Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357, 1363 (1931) ; *Whitney* v. *California,* 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095, 1104 (1927) (Brandeis, J., concurring). There can be little disagreement in the proposition "that school officials should be accorded the widest authority in maintaining discipline and good order in their institutions." *Tinker* v. *Des Moines Community School District, supra,* 21 L.Ed.2d at 749 (Harlan, J., dissenting).

The State has a legitimate interest in protecting its educational system from disorderly disruption during classes scheduled for the instruction of students. And a teacher who encourages or participates in action which militates against this interest, in relating to his students or his superiors, fails in his duties within the meaning of the statute. See *Beilan* v. *Board of Education, supra,* 2 L.Ed.2d at 1419; *Tichenor* v. *Orleans Parish School Board,* 4 A.L.R.3d 1084, 1089 (La. App. 1962), and accompanying Annot., 4 A.L.R.3d 1090, at §§ 5(a), 6(a) (1965).

There is no extraordinary ambiguity in "failure to attend to duties or failure to carry out reasonable orders." Teachers with common intelligence are not called upon to guess at its meaning. Nor do we conceive there is a danger that its application will have a "chilling effect upon the exercise of vital First Amendment rights . . ." within the forbiddance of *Keyishian* v. *Board of Education,* 385 U.S. 589, 604, 87 S.Ct. 675, 17 L.Ed.2d 629, 641 (1967).

The record manifests a deep-seated sympathy in the petitioners Davenport and Baker for the predicament of their fellow teacher, Mrs. Carpenter. But that attitude on their part did not justify intransigent action against the legitimate concern of the school authorities in maintaining discipline and good order in the Hartford high school. The record at hand fails to establish that the application of 16 V.S.A. § 1752, with the specific statement of charges under subsection (b), offended against the rights of the petitioners under the First

and Fourteenth Amendments of the Constitution of the United States.

*The applications of John Davenport and Charles Baker for writs of certiorari are denied.*